HEATH (ERIE RAILWAY CO. v.). See Cases Nos. 4,513–4,516.

---

## Case No. 6,308.

### HEATH v. HILDRETH.

[See Case No. 6,309.]

---

## Case No. 6,309.

### HEATH v. HILDRETH.

[1 MacA. Pat. Cas. 12; Cranch, Pat. Dec. 96.] [1]

Circuit Court, District of Columbia.    Oct. 15, 1841.

PATENTS—PRIORITY OF INVENTION—"REDUCED TO PRACTICE" DEFINED—CAVEAT—LACHES.

[1. The right of a first inventor, who is maturing his invention and preparing to make application in a reasonable time, to a patent is not barred by the fact that before making his application a subsequent inventor has obtained a patent, and has put the invention into actual use.]

[Cited in Richardson v. Hicks, Case No. 11,-783. Approved in Re Wagner, Id. 17,038; Ellithorp v. Robinson, Id. 4,409. Applied in Mowry v. Barber, Id. 9,892.]

[2. To be the "first inventor," within the meaning of the patent law of 1836 (5 Stat. 117), it is not necessary that he who first conceived the idea should reduce it to practice otherwise than by making a model and drawings from which one skilled in the art would be enabled to carry it into actual use.]

[Cited in Marshall v. Mee, Case No. 9,129; Re Seeley, Id. 12,632. Approved in Stephens v. Salisbury, Id. 13,369.]

[3. "Reduced to practice," as used in the patent law, does not import bringing the invention into use, but rather reducing it to such form that it may be used so as not to be a mere theory. If a machine be invented and described in such manner that it may be made and used, and especially if a model be made, the invention may be said to be reduced to practice.]

[4. The filing of a caveat, as provided for in the twelfth section of the act of 1836, is for the benefit of the inventor, and enables him to have notice of any interfering application; and hence an omission to file it while maturing his invention does not impair his rights.]

[5. It is doubtful whether mere lapse of time between the time of invention and the filing of the application will authorize the commissioner to refuse a patent to the first inventor, especially when he was bona fide taking measures to improve as perfect his invention, and preparing to apply for a patent, unless there has been some intermediate use by the applicant or by his consent; and, in any event, a delay of four years does not have that effect.]

[This was an appeal by George W. Hildreth, owner of patent No. 1,517, granted

[1] [Cranch, Pat. Dec. 96, contains only a partial report.]

March 29, 1840, from a decision of the commissioner of patents, in interference proceedings, awarding to George Heath priority of invention of an improved canal lock gate.].

The Commissioner:

It is admitted by both parties that the inventions are substantially the same, and it is not claimed by Hildreth that the invention ultimately perfected and presented at the patent office [by him] is any other than the one to which the witnesses on the part of Heath testify to having seen in the possession of said Heath as early as the spring or summer of 1836. On the other hand, it does not appear that Hildreth invented said gate or had any knowledge of it until the summer of 1838. It is therefore perfectly apparent from the testimony (and is not seriously controverted by Hildreth) that Heath had conceived the idea of the gate in question and constructed one in miniature, to wit, a model, long before the first notions of the same entered the mind of Hildreth, which would certainly seem to settle the question of priority of invention, and certainly does settle it, unless the courts have given a construction or signification to the word "invention" very different from that ordinarily attributed to it. But there are two points upon which Hildreth relies, to wit: First. He claims that Heath has forfeited his right by neglecting to "put it into actual use." Secondly. That the evidence is that Heath had abandoned his invention. As to the first point, the statute in so many words gives the patent to the "original and first inventor," and nowhere requires the same to be reduced to practice or put into use—a condition too important to have been omitted, if it were really a prerequisite. And, moreover, among the circumstances which are enumerated as invalidating a patent already obtained, is proof that the same "has been described in some public work," &c., which is sufficient without proving "putting into use." It certainly would be preposterous under our statute to require an applicant who had invented a steamship to build one of full size, and put it into operation, before a patent could issue or his right be protected. As matter of practice, the great mass of patents daily granted are granted upon models of what has never been reduced to practice in any other sense than the invention of Heath was so reduced. The statute requires as necessary to the grant of a patent that the "invention," &c., should be of something "not known or used before," &c., which renders previous knowledge without use sufficient to invalidate a patent, and destroys the ground upon which Hildreth rests his claim. But it is not to be taken as granted that the courts, in the face of the statute, have decided that reduction to practice is necessary to preserve the rights of the party; and it is incumbent on Hildreth to show such decisions, if they exist. The cases of Bedford and Hunt and Evans and Eaton,

quoted by him, do not establish the doctrine contended for. In those cases the question was whether prior use was sufficient to invalidate a subsequent patent; and the court very properly decided that it was, and a verdict was rendered for the defendant. But the question, what would amount to a prior invention, or whether a prior invention not put in actual use would have invalidated the patent, was no part of the case; and what is said by the court beyond the limits of the case is a mere dictum, and not authority.

But, giving the language of the court its full force, taken in connection with the other parts of the case, it amounts simply to this: "that the mere speculations of a philosopher or mechanician" would not defeat an inventor. And surely it never can be successfully contended that inventing a machine and building it on a small scale, making drawings of it, and describing it in the form of a caveat, and making oath to the invention of the same, "are mere speculations." If the court had used the language "mere speculations," &c., without adding anything about putting "into practice," this passage would never have been quoted by the appellant. But does adding the expressions "never put into actual operation," "never tried by the test of experience," change the force of the language? Not in the least. It is still a "mere speculation," not a model, drawing, and specification. If the court had said "inventing a machine and making a model, drawings, and specifications of the same, without putting the machine into actual operation, will not defeat an inventor," the dictum would have been in point; and unless the language of the court will bear this construction (which it clearly will not,) it is not in point, and makes nothing for the claim of the appellant. It is submitted, therefore, that the appellant has wholly failed to show that reduction to practice is a prerequisite to the grant of a patent, but that the provisions of the statute may be fully complied with without putting the invention into actual use.

Thos. P. Jones, for appellant.

Mr. Fitzgerald, for appellee.

CRANCH, Chief Judge. On the 29th of April, 1840, George Heath filed in the patent office his application for a patent for his invention of an improved canal lock-gate. The commissioner, being of opinion that the patent thus applied for would interfere with an unexpired patent granted to George W. Hildreth on the 19th of March, 1840, gave notice thereof to the parties, and, upon a hearing before him, decided that George Heath was the original and first inventor, and entitled to a patent therefor. From this decision Mr. Hildreth has appealed; and the question is now submitted to me by the parties, upon written argument. The commissioner has furnished a certificate in writing of his opinion and decision; and Mr. Hildreth has filed his reasons of appeal with the written argument of his counsel. The reasons for appeal thus filed are eight in number, but may be reduced to three: (1) Because Mr. Heath was not the first inventor, in the meaning of the patent law, inasmuch as his invention was never reduced to practice, but was the mere speculation of a philosopher or mechanician. (2) Because he never filed a caveat pursuant to the twelfth section of the act of July 4th, 1836. (3) Because he has forfeited his claim to the invention by his delay in applying for a patent.

1. Upon the first point the very ingenious argument of Mr. Hildreth's counsel is founded upon a dictum of Mr. Justice Story in the case of Bedford v. Hunt [Case No. 1,217], that "the first inventor who has put the invention in practice, and he only, is entitled to a patent," and that dictum was, perhaps, founded on these words in the sixth section of the act of February 21st, 1793, viz., "or that the thing thus secured by patent was not originally discovered by the patentee, but had been in use, or had been described in some public work, anterior to the supposed discovery by the patentee," &c., from which an inference seems to be drawn that the defense—that the matter was not originally discovered by the patentee—would not avail the defendant unless he should show also that it had been in use by the prior discoverer. But the words "but had been in use" seem to have been carefully excluded from the fifteenth section of the act of 1836, which, like the sixth section of the act of 1793, states the matters which may be given in evidence under the general issues in an action for infringing the plaintiff's patent. By thus excluding those words the defense—"that the patentee was not the original and first inventor or discoverer of the thing patented"—is complete without showing that the first inventor had put his invention in practice.

None of the patent laws have ever required that the invention should be in use or reduced to actual practice before the issuing of the patent, otherwise than by a model, drawings, and a specification containing a written description of the invention and of the manner of making, constructing, and using the same in such full, clear, and exact terms as to enable any person skilled in the art to which it appertains to make, construct, and use the same. In England it is understood that if the thing is in use before the issuing of the patent it is void; and our act of March 3, 1839, § 7 [5 Stat. 354], in order to meet such an objection, provides that the use of the thing, even by leave of the inventor, for two years before his application for a patent, shall not invalidate it; a fortiori, the use of it by a third person, or a subsequent inventor, after the first invention and before the issuing of the patent to the first inventor, and without his consent, will not, under our patent laws, be a bar to the issuing of it.

Mr. Justice Story, in the case of Bedford v. Hunt [supra], was not considering the question whether the patent should be issued, but whether it should be invalidated by prior use. He has not said that under any circumstances an invention must be in use before a patent for it can be obtained; and his dictum is wholly inapplicable to the question whether the commissioner of patents should issue a patent. If a patent should be issued to Mr. Heath, its validity would be still a question open to the courts, and is one which can be conclusively settled by the courts only. By the seventh section of the act of 1836, the commissioner is bound to issue a patent in the case and under the circumstances there stated. He has in such a case no discretion; and the present is such a case. By that section it is enacted "that on the filing of any such application, description, and specification, and the payment of the duty hereinafter provided, the commissioner shall make or cause to be made an examination of the alleged new invention or discovery; and if on such examination it shall not appear to the commissioner that the same had been invented or discovered by any other person in this country prior to the alleged invention or discovery thereof by the applicant, or that it had been patented or described in any printed publication in this or any foreign country, or had been in public use or on sale, with the applicant's consent or allowance, prior to the application—if the commissioner shall deem it sufficiently useful and important, it shall be his duty to issue a patent therefor."

It appears by the proceedings before the commissioner that Mr. Heath regularly filed his application, description, and specification, and paid the duty; that the commissioner made the examination; and that upon such examination it did not appear to him that the same had been invented or discovered by any other person, or had been patented or described in any printed publication in this or any foreign country prior to the alleged invention or discovery thereof by the applicant, or that it had been in public use or on sale, with the applicant's consent or allowance, prior to his application. The commissioner was, therefore, prima facie bound to issue the patent to Mr. Heath. At first view it may seem doubtful, from the words of that section, whether a patent issued to the second inventor before the application of the first inventor would not be a bar to the issuing of a subsequent patent to the first inventor. But upon comparing the words of that section with those of the sixth, eighth, and fifteenth sections of the same act, it is evident that the patent, which would bar the issuing of a patent to the applicant, must be a patent issued prior to his invention, and not merely prior to his application. Having complied with all the requisites of the seventh section, what is to prevent the applicant from obtaining his patent? It is alleged that he was not the first inventor because he had not reduced his invention to practice. But that objection is answered by showing that there is no law which requires an inventor to put his invention in practice or use before obtaining his patent; and it is perfectly immaterial to him whether the subsequent inventor had put it in practice or not. That fact cannot affect the right of the first inventor. If congress had intended that a patent to the second inventor should be a bar to a patent to the first inventor, they would not have given jurisdiction to the commissioner to decide the question of priority between them, and to grant a patent to the first inventor in cases of interference, as they have done by the eighth section of the act. Neither that section nor any other section of that or any other act makes the right of the patentee or of the applicant depend upon the fact of the invention being reduced to actual practice, except in the case of an alien patentee failing and neglecting, "for the space of eighteen months from the date of the patent, to put and continue on sale to the public, on reasonable terms, the invention or discovery for which the patent issued." From this exception an inference may be drawn that a citizen patentee cannot lose his right by non-user, unless it amount to evidence of an abandonment of the patent; and the question of abandonment of a patent is a question for the jury in a trial at law. If the invention be the mere speculation of a philosopher or mechanician in his closet, and he takes no steps toward obtaining a patent, but keeps his invention secret, and another person, who is also an original but subsequent inventor of the same thing, obtains a patent for it and brings it into use, it has been held, both in England and in this country, that the patentee in a suit at law is to be considered as the first inventor. But it has happened in such case, as in many others, that elementary writers and subsequent tribunals have laid down the doctrine in broader terms than the cases upon which it was founded will warrant.

Thus Smith, in his Epitome of the Patent Laws (page 11), says: "It sometimes happens that two men severally discover the same thing, each by his own unassisted exertions; when this happens, the first who communicates it to the public is deemed the first inventor and entitled to the patent." And he cites Boulton v. Bull, 2 H. Bl. 487; Forsyth v. Riviere, Chit. Prerog. 132n; Lewis v. Marling, 10 Barn. & C. 22; Wood v. Zimmer, Holt, N. P. 58; Edgeberry v. Stephens, 2 Salk. 447. And Mr. Justice Story, in the case before cited, says: "The first inventor who has put the invention in practice, and he only, is entitled to a patent."

The doctrine thus broadly laid down is not supported to that extent by the cases cited, and it would be unjust if it were, for it makes no exception of the bona fide first in-

ventor who is "using reasonable diligence in adapting and perfecting" his invention, and whose right is saved by the spirit, if not by the letter, of the fifteenth section of the act of 1836, which makes it a good defense to an action for infringing the patent that the plaintiff had "unjustly obtained the patent for that which was, in fact, invented or discovered by another, who was using reasonable diligence in adapting and perfecting the same." If such a case had been presented to the mind of Mr. Justice Story, there can hardly be a doubt that he would have excepted it from the broad terms of the doctrine as laid down by him in the case of Bedford v. Hunt. Such, from the evidence and admissions of counsel, was the case of Mr. Heath. He was using reasonable diligence in adapting and perfecting his invention; and it appears by testimony adduced by Mr. Hildreth that in the winter of 1839, before he obtained his patent, Mr. Heath exhibited to the witness Alfred Barrett, who had in his possession a model of Mr. Hildreth's paddle-gate, his (the said George Heath's) model of his gate, and claimed to be the inventor thereof. It is probable, therefore, that Mr. Hildreth had notice of Mr. Heath's claim before he obtained his patent. The doctrine as stated by Mr. Smith and by Mr. Justice Story seems to have originated in Dolland's Case, cited by Buller, J., in the case of Boulton v. Bull, [supra.] Dolland had a patent for an improvement in making object-glasses for telescopes. It was objected that he was not the inventor, "but that Doctor Hall had made the same discovery before him. But it was holden that as Doctor Hall had confined it to his closet, and the public were not made acquainted with it, Dolland was to be considered as the inventor." This Case of Dolland is not reported; and all that we know of it is what was said by Buller, J., in the case of Boulton v. Bull, 2 H. Bl. 463, 464; and upon that foundation is probably built the broad doctrine that the first of two original inventors who communicates the invention to the public is entitled to the patent, although the other invented the thing first. Between simultaneous inventors this may be just, because neither can claim the priority; but it cannot be just that the prior inventor, who is maturing his invention and preparing to make application for a patent in a reasonable time, should be defeated by a subsequent inventor who first obtains a patent. This is not the doctrine of Dolland's Case, which was only that an inventor who confines his invention to his closet, and does not communicate it to the public, and takes no steps toward obtaining a patent until a subsequent original inventor has obtained his patent, thereby forfeits and abandons his claim to priority of invention. But the question of forfeiture or abandonment is for the jury upon a trial at law. The first inventor is prima facie entitled to a patent, and the commissioner, as before observed, is bound to issue it under the seventh section of the act of 1836, if certain facts should not appear to the commissioner, as therein specified, which specification of facts does not include delay or abandonment; so that the question of delay or abandonment is not by that section submitted to the jurisdiction of the commissioner.

I do not consider the expression "reduced to practice" as importing the bringing of the invention into use. When applied to an invention, it generally means the reducing it into such form that it may be used so as not to be a mere theory. If a machine be invented and described in such a manner that it may be made and used, and especially if a model be made, the invention may be said to be reduced to practice. In the present case it is admitted in argument (and such is the evidence) that Mr. Heath in the summer of 1836 actually made a lock-gate according to his specification. It was, indeed, a small one—a model only—but the size is of no importance. The thing was done; the invention was reduced to practice; and it was demonstrated thereby that the invention was practicable. I am, therefore, and for the reasons before stated, of opinion that where the invention is not of a mere philosophical speculation, abstraction, or theory, but of something corporeal, something to be manufactured, the applicant need not show that he has reduced his invention to practice otherwise than by filing his specification and furnishing drawings and a model, as required by the statute, where the nature of the case admits of drawings or of a representation by a model. These having been thus filed and furnished by Mr. Heath, and it being admitted that he, in point of time, was the first inventor of the thing patented, he is entitled to a patent therefor, notwithstanding the patent granted to Mr. Hildreth, unless he has lost his right by not filing a caveat or by delay in applying for his patent.

2. The second reason of appeal is that Mr. Heath never filed a caveat pursuant to the twelfth section of the act of July 4, 1836. That section was introduced for the benefit of the inventor, but was not necessary to the preservation of his right. It only enables him to have notice of any interfering application. Godson (Law of Patents, 146) says: "Of its nature and effect much misconception has arisen. It does not create any right, but is simply a request to be favored with information." Again he says: "Upon the whole, therefore, the entering of a caveat is nothing more than giving information that there is an invention nearly completed, and requesting that if any other person should apply for a patent for the same thing the preference may be given to him who entered it, which request is complied with by the courtesy of the crown

upon its being satisfied of its reasonableness by the report of the attorney-general or the opinion of the lord chancellor; and when the patent is granted, it is to be judged of as if no caveat had been entered." But this caveat gives no notice to the world or even to the interfering applicant. It is notice to the commissioner only, and is locked up in the secret and confidential archives of the office. It would not in any manner have strengthened the title of Mr. Heath; nor does the omission of it impair that title or aid that of Mr. Hildreth. This reason of appeal, therefore, as well as the first, must be overruled.

3. The last reason of appeal is that Mr. Heath has forfeited his claim to the invention by his delay in applying for a patent. The statute does not limit any time in which the inventor must apply for a patent, nor does it declare a forfeiture by reason of any delay. The delay, therefore, seems to be unimportant, unless it amounts to evidence of abandonment of the claim. It is not one of the specified grounds for which the commissioner is, by the seventh section of the act of 1836, authorized to refuse to grant the patent, and it seems to be a matter within the peculiar province of the jury upon a trial at law in any action which either of the patentees may institute against the other. If there be any limit of the time of application, it must be a reasonable limit, and that is proper matter for the consideration of a jury. And I am very much inclined to the opinion that any matter of defense which it is the peculiar province of a jury to decide, and which is not, by the seventh section of the act of 1836, made a ground for the refusal of a patent by the commissioner, should be left by him to be decided by the jury in a subsequent action at law. In Morris v. Huntington [Case No. 9,831], Mr. Justice Thompson said: "No man is to be permitted to lie by for years and then take out a patent. If he has been practicing his invention with a view of improving it, and thereby rendering it a greater benefit to the public before taking out a patent, that ought not to prejudice him; but it should always be a question submitted to the jury what was the intent of the delay of the patent, and whether the allowing the invention to be used without a patent should not be considered an abandonment or present of it to the public." In Pennock v. Dialogue, 2 Pet. [27 U. S.] 16, Mr. Justice Story, in delivering the opinion of the court, says: "It has not been, and indeed cannot be, denied that an inventor may abandon his invention and surrender or dedicate it to the public. The question which generally arises at trials is a question of fact rather than of law, whether the acts of acquiescence of the party furnish, in the given case, satisfactory proof of an abandonment or dedication of the invention to the public." The point decided by the court in that case was "that

the first inventor cannot acquire a good title to a patent if he suffers the thing invented to go into public use, or to be publicly sold for use, before he makes application for a patent." But it is believed that it has not yet been decided that the right of first inventor has been lost merely by lapse of time between the invention and the application for the patent, unless there has been some intermediate use by the applicant or by his consent, and especially where he was bona fide taking measures to improve or perfect his invention and to prepare for applying for the patent, which, from the evidence, appears to have been the case of Mr. Heath. If, therefore, the question of abandonment be cognizable by the commissioner, there is in my opinion no evidence to support it; and this reason of appeal must also be overruled. It is therefore, upon the whole case, my opinion, and I do so decide and adjudge, that the decision of the commissioner of patents in this cause be, and is hereby, affirmed.

[See Reed v. Cutter, Case No. 11,645; Evans v. Eaton, 3 Wheat. (16 U. S.) 454.]