Mr Justice Siony
 

 delivered the opinion of the Court.
 

 This is a Writ of error to the circuit court of Pennsylvania. The original action was brought by the plaintiffs in error for an asserted violation of a patent, granted to them on the 6th of July 1818, for a new and useful improvement in the art of making leather tubes or hose, for conveying air, water, and other fluids. The cause was tried upon the general issue, and a verdict was found for the defendant, upon which judgment passed in his favour; and the correctness of that judgment is now in controversy before this court.
 

 At the trial, a bill of exceptions was taken to an opinion delivered by thecourt, in the charge to the jury, as follows, viz. “That the law arising upon the case was, that if an inventor makes his discovery public, looks on and permits others freely to use it, without objection or assertion of claim to the invention, of which the public might take notice; he abandons
 
 *15
 
 the inchoate right to the exclusive use of the invention, to which a patent would have entitled him had it been applied for before such use.. And, that it makes no difference in the principle, that the article so publicly used, and afterwards patented, was made by a particular individual, who did so by the private permission of the.inventor. And thereupon, did charge the jury,
 
 that if the evidence brings the case within the principle which had been
 
 stated.-the court were of opinion that the plaintiffs were riot entitled to a verdict.”
 

 The record contains, embodied in the bill of exceptions, the whole of the testimony and evidence offered at the trial,, by each party, in support of the issue. It is jery voluminous, and as no exception was taken to its competency, or sufficiency, either generally or for any particular purpose; it is not properly before this Court for consideration, and forms an expensive and unnecessary burthen upon the record. This Court has had occasion in many cases to express its regret, on account of irregular proceedings of this nature. There' was not the slightest necessity of putting any portion of the evidence in this case upon the record, since the opinion of the court delivered to the jury, presented a general principle of law, and the application of the evidence to it was left to the jury.
 

 In the argument at the bar, much reliance has been plated upon this evidence, by the counsel- for both parties. ( It has been said on behalf of the defendants in error; that it called for other and explanatory directions from the court, and that the omission of the court to give them in the charge, furnishes a good ground for. a reversal, as it would have furnished in the court below for . a new trial.. But it is no ground of reversal that the court below omitted to give directions to the jury upon any points of law which might arise in the cause,.where it was not requested by either party at the trial. It is sufficient for us that the court has given no erroneous directions. If either party deems any point presented by the evidence to be omitted in the charge, it is competent for such, party to require an opinion, from the court upon that point. If he does not, it is a waiver of it.
 
 *16
 
 The court cannot be presumed to do more, in ordinary cases, than to express its opinion upon the questions which the parties themselves have raised at the trial.
 

 On the other hand, the counsel for the defendant in error has endeavoured to extract from the same evidence, strong confirmations of thé charge of the court. But, for the reason already suggested, the evidence must be.laid out of the case, and all the reasoning founded on it falls.
 

 The. single question then is, whether the charge of the' court was correct in point of lavv. It has not been, and indeed cannot be denied, that an inventor may abandon his invention, and surrender or dedicate it to the public. This inchoate right, thus once gone, cannot afterwards be resumed at his pleasure; for, where gifts are once made to the public in this way," they become absolute. . Thus, if a man dedicates a way, or other easement to the public, it is supposed to carry with it a permanent right of user: The question which generally arises at trials, is a question of fact, rather than of law; whether the acts or acquiescence of the party furnish in the given case, satisfactory proof of an abandonment or dedication of the invention to the public. But when all the facts are given, there does not seem any reason why the court may not state the legal conclusion deducible from them. In this view of the matter, the only question would be, whether, upon general principles, the facts stated by the court would justify the conclusion.
 

 In the case at bar; it is unnecessary-to consider whether the facts stated in the charge of the court would, upon general principles, warrant the conclusion drawn by the court, independently of any statutory provisions; because, we are of opinion, that the proper answer depends upon the true exposition of the act of congress, under which the present patent was obtained. The constitution of the United títates has declared, that congress shall have power “ to promote the progress of science and useful arts, by securing
 
 for limited, times,'
 
 to authors and inventors, the exclusive fight to their.respective writings and discoveries.” It contemplates, therefore, thal this exclusive right shall exist but
 
 *17
 
 for a limited period, and that the period shall be subject to the discretion of congress. The patent act, of the 21st of February, 1793, ch. 11, prescribes the terms and conditions and manner of obtaining patents for inventions; and proof of a strict compliance with them lies at the foundation of the title acquired by the patentee. The first seqtion provides, “that when any person or persons, being a citizen or citizens of the United States, shall allege that he or they have invented any new or useful art, machine, manufacture, or composition of matter, or any new or useful improvement on any art, machine, or composition of matter,
 
 not known or used before the application;
 
 and shall present a petition to the secretary of state, signifying, a desire of obtaining an exclusive property in the same, and praying that a patent may be granted therefor; it shall and may be lawful for the said secretary of state, to cause letters patent to be made out in the name of the United States, bearing teste by the President of the United States, reciting the.allegations and suggestions of the. said petition, and giving a short description of the said invention or discovery, and thereupon, granting to the said petitioner,
 
 &c.for a term not exceeding fourteen years,
 
 the full and exclusive right and liberty of
 
 making, constructing, using,
 
 and
 
 vending to others to be used,
 
 the said invention or discovery, &c.” The third section provides,
 
 “
 
 that every inventor, before he can receive a patent, shall swear, or affirm, that he does verily believe that he is the true inventor or discoverer of the art, machine, or improvement for which he solicits a patent.” The sixth section provides that the defendant shall be permitted to give in defence, to any action brought against him for an infringement of the patent, among other things, “ that the thing thus secured by patent was not originally discovered by the patentee,
 
 but had been in use,
 
 or had been described in some publie work,
 
 anterior to the supposed discovery of the
 
 patentee.”
 

 These- are the only material clauses bearing upon the question now before the court; and upon the construction of them, there has been no inconsiderable diversity of
 
 *18
 
 opinion entertained among, the profession, in cases heretofore litigated.
 

 It is obvious to the careful inquirer, that many of the provisions of our patent act are derived from the principles and practice which have prevailed in the construction of that of England. It is doubtless true, as has been suggested at the bar, that where English statutes, such for instance, as the statute of frauds, and the statute of limitations; have been adopted into our own legislation; the known and settled construction of those statutes by courts of law, has been considered as silently incorporated into the acts, or has been received with- all the weight of authority. Strictjy speaking, that is not the case in respect to the English statute of monopolies; which contains an exception on which the grants of patents for inventions have issued in-that country. The language of that clause of the statute is not, as we shall presently see, identical with ours; but the construction of it adopted by the English courts, and the principles and practice which have long regulated the grants of their patents, as they must have been known and are tacitly, referred to in some of the provisions of our own statute, afford materials to illustrate it.
 

 , By the very terms of the first section of our statute, the v secretary of state is authorised-to grant a patent to any citizen applying for the same, who shall allege that he has invented a new and useful art, machine,, &c. &,c. “
 
 not known or used before the
 
 application?” The authority is a limited one,, and the party must bring himself within the. terms,, before he can derive any title to demand, or to hold a patent. ..What then is the true meaning of the words “
 
 not known or used before the application V
 
 They cannot mean that the thing invented was not known or used before the application bythe inventor himself, for' that would be to prohibit him from the only means of obtaining a patent. The use, as well as the knowledge of his invention, must be indispensable to enable him to ascertain its competency to the end proposed, as well as to perfect its component parts. The words then, to have any rational interpretation, must
 
 *19
 
 mean, not known or used by others, before the application. But how known or used1? If it were necessary, as it well might be, to employ others to assist in the original structure or use by the inventor himself; or if before his application for a patent his invention should be pirated by another, or used without his consent; it can scarcely be supposed, that the legislature had within its contemplation such knowledge or .use.
 

 We think, then, the true meaning must be, not known or used by the public, before the application. And, thus construed, there is much reason for the limitation thus imposed by the act. While one great object was, by holding out a reasonable reward to inventors, and giving them an exclusive right to their inventions for a limited period, to stimulate the efforts of genius ;■ the main object was “to promote the progress of science and useful arts;” and this could be done best, by giving the public at large a right to make, construct, use, and vend the thing invented, at as early a period as possible; having a due regard to the rights of the inventor. If an inventor should be permitted to hold back from the knowledge of the public the secrets of his invention; if he should for a long period of years retain the monopoly, and make, and sell his invention publicly, and thus gather the whole profits of it, relying upon his superior skill and knowledge of the structure; and then, and then only, when the danger of competition should force him to secure the exclusive right, he should be allowed to take out a patent, and thus exclude the public from any farther use than what should be derived under jt during his fourteen years; it would materially retard the progress of science and the useful arts, and give' a premium to those who should be least prompt to communicate their discoveries.
 

 A provision, therefore, that should withhold from an inventor the privilege of an exclusive right, unless he should, as early as he.should adovv the public use, put the public in possession of his secret, and commence the running of the period, that should limit that right; would not be deemed unreasonable". It might be expected to find a place in a
 
 *20
 
 wise prospective legislation on such a subject. If it was already found in the jurisprudence of the mother country, and had not been considered inconvenient there; it would not be unnatural that it should find a place in our own.
 

 Now, in point of fact, the statute of 21 Jac. ch. 3,- commonly called the statute of monopolies, does contain exactly such a provision. That act, after prohibiting monopolies generally, contains, in the sixth section, an exception in favour of “ letters patent and grants of privileges for
 
 fourteen years or undery
 
 of the sole working or making of any manner of new manufactures within this realm, to the true and first inventor and-inventors of such manufactures, which
 
 others, at the time of making such letters patent and grants, shall not use." '
 
 Lord Coke, in his commentary upon this clause or proviso, (3 Inst. 184,) says that the letters patent “ must be of such manufactures, which
 
 any other at the time of making such letters patent did not use;
 
 for albeit it were newly invented, yet if any other did use it at the making of the letters patent, or grant of the privilege, it is declared and enacted to be void by this act.” The use here referred to has always been understood to be a public use, and not a private or surreptitious use in fraud of the inventor.
 

 In the c'ase of Wood
 
 vs.
 
 Zimmer, 1
 
 Holt's N. P. Rep.
 
 58, this doctrine was fully recognised by lord chief justice Gibbs. There the inventor had suffered the 'hing invented to be sold, and go into public use for four months before the grant of his patent; and it was held by the court, that on this account the patent was utterly void. Lord chief justice Gibbs said,
 
 “
 
 To entitle a man to a patent, the
 
 invention
 
 must be
 
 new to the world.
 
 The
 
 public
 
 sale of that which is afterwards made the subject of a patent,
 
 though sold by the inventor only,
 
 makes the patent void.” By “ invention,” the learned judge undoubtedly meant, as .the context abundantly show's, not the abstract discovery, but the
 
 thing
 
 invented; not the new secret principle, but the manufacture' resulting from it.
 

 The words of our statute are not identical with those of
 
 *21
 
 the statute of James, but it can scarcely admit of doubt, that they must have been within the contemplation of those by whom it was framed, as well as the construction which had been put upon them by Lord Coke. But if, there were no such illustrative comment, it is difficult to conceive how any other interpretation could fairly be put upon these words. We are not at liberty to reject words which are sensible in the place where they occur, merely because they may be thought, in some cases, to import a hardship, or tie up beneficial rights within very close limits. If an invention is used by the. public, with the consent .of the inventor, at the time of his application for a patent; how can the court say, that his case is, nevertheless, such as the act was intended to protect? If such a public use is not a use within the meaning of the statute, what other use is?. If it be a use within the meaning of the statute, how can the court extract the case from its operation, and support a patent, where the suggestions of the patentee are not true, and the conditions on which alone the grant was authorised to be made, do not exist? In such a case, if the court could perceive no reason for'the restrictions,' the will of the legislature must still be obeyed. It cannot and ought not to be disregarded, where it plainly applies to the case. But if the restriction may be perceived to have a foundation in sound policy, and be an effectual means of accomplishing the legislative objects,' by bringing inventions early into public and unrestricted'use; and above all, if such policy has been avowed- and acted upon in like cases in laws having similar objects; there is very urgent reason to suppose, that tlie act in those terms embodies the real legislative intent, and ought to receive that construction. It is not wholly insignificant in this point of view, that the first patent act passed by congress on this subject, (act of 1790, ch. 34, [ch. 7.) which the present act repeals, uses the words “
 
 not known or used
 
 before,” without adding the words “
 
 the
 
 applicatiónand in connexion with the structure of the sentence in which they stand, might have been referred either to the time of the invention, or of the application. The addition of the
 
 *22
 
 latter words in the patent act of 1793, must, therefore, have been introduced, ex industria, and with the cautious intention to clear away a doubt, and fix the original and deliberate meaning of the legislature.
 

 The act of the 17th of April 1800, ch. 25, which extends the privileges of the act of 1793 to inventors whcTare aliens; contains a proviso declaring, “ that every patent which shall be obtained, pursuant to the act for any invention, art or discovery,
 
 which it shall afterwards appear had been known or used previous to such application for a patent,
 
 shall be void.” This proviso certainly certifies the construction of the act of 1793, already asserted'; for there is not any reason. to suppose, that the legislature intended to confer on
 
 aliens,
 
 privileges, essentially different from those belonging to
 
 citizens.
 
 On the contrary, the enacting clause of the act of 1800 purports to put both on the same footing; and the proviso seems added as a- gloss or explanation of the original act.
 

 The only real doubt which has arisen upon this exposition of the statute, has been created by the words of the sixth section already quoted. That section admits the party sued to give in his defence as a bar, that “ the thing thus secured by patent was not originally, discovered by the patentee, but had been in use
 
 anterior to the supposed discovery
 
 of the patentee.” It has been asked,' if the legislature intended to bar the party vfrom a patent in consequence of a mere prior use, although he was the inventor; why were not the words “ anterior
 
 to the application”
 
 substituted, instead of ‘^anterior
 
 to the supposed
 
 discovery? If a mere use'-of the thing invented before the application were sufficient to bar the right, then, although the party may have been the-first and true inventor, if another person, either innocently as a second inventor, or piratically, were to use it without the knowledge of the first inventor; his right would be gone. In respect to a use by piracy, it is not clear that, any such fraudulent use is within the intent of the statute; and upon general principles it might well be held excluded. In respect to the case of a second invention, it is questionable
 
 *23
 
 at least, whether, if by such second invention a public use was already acquired, it could be deemed a case within the protection of the act. If the public were already in possession and c.ommon use of an Invention fairly and without fraud, there might be sound reason for presuming, that the legislature did not intend to grant an exclusive right- to any one to monopolize that which was already common. There would be no quid pro quo — no price for the exclusive right or monopoly conferred upon the inventor for fourteen years.
 

 Be this as it may, it is certain that the sixth section is not necessarily repugnánt to'-the construction which the words of the first section require and justify. The sixth section . certainly does not enumerate all the defences which a party may makgdn a suit brought against him for-violating a patent. One obvious omission is, where he uses if under a license or grant from the inventor. The sixth section in the clause under consideration, may well be deemed merely affirmative of what would be the. result from the general principles of law applicable .to other parts of the statute. It gives the right to the
 
 first
 
 and true inventor and to him only; if known of used before his supposed discovery He is not the
 
 first,
 
 although' he may be a
 
 true
 
 inventor; and that i is the case, to which the clause lobks. Rut-it is not inconsistent with this Hncrrine._t.hat although he is the
 
 first,
 
 as ■-welbas-tbgf7TgemventdrTyet4f-lie~?lraIl--ptHH:t-fflto--pubi-ieuse,-- or spfl il_for-publtc-nsrrbefbre*iie applies for a patent., thai- — this .should--fcrnTsh — another bar to his claim. . In this view an interpretation is given to every clause of the statute without. introducing any inconsistency, or interfering with the •ordinary meaning of its language. No public policy is overlooked; and no injury can Ordinarily occur to the first inventor, which is not in some sort the result of fits own laches or voluntary inaction.
 

 It is admitted that .the subject is not wholly free from difficulties; but upon most deliberate consideration we are all of opinion, that the true construction of the act is, that the first inventor cannot acquire a good title to a patent: if he suiters-the thing invented to go into-nnhfir use,
 
 *24
 
 públicly sold for use, before he makes application for a pa-~Tént. HTs voluntary act or acquiescence in the public sale and use is an abandonment of .his right; or rather Creates a disability to. comply with the terms and conditions on which alone the secretary of state is authorized to grant him a* patent.
 

 The opinion.of the circuit court was therefore perfectly correct; and the judgmént.is affirmed with costs.
 

 This cause came.-on to be heard .on the transcript of the 'record from the circuit court of the United States for the district of Pennsylvania, and was argp 1 by counsel; on. consideration whereof, it is the opinion of this Court, that there is no error in the judgment of the said circuit court. . Whereupon, it is considered, ordered and adjudged by this Court, that , the said judgment of the said circuit court in this causé, be. and the saíne is hereby affirmed with costs.