## HUNT & NORRIS *versus* TOULMIN.

It is in the power of a party applying for the charge of a Court, to have it specifically applied to every point arising on the evidence; and where the charge is asked in such general manner, as that when given it may not be as explicit as the testimony would authorise: it is not a ground of reversal, that the charge was too general.

A party, undertaking to perform a piece of work for another, will be required to complete it according to the contract, but where the work fails after its completion, by any means not within the control of the contracting party, this will not bar a recovery for the price contracted to be paid.

In error from Mobile Ciruit Court.

This was an action of assumpsit. Toulmin, the defendant in error, had undertaken, for a stipulated price, to build the walls of a brick house for the plaintiffs. Shortly after their completion, the house fell, and the present action was brought to recover the amount contracted to be paid for the work. The witnesses examined on the trial, assigned different reasons for the destruction of the house. By some, it was attributed to a defect in the roof; and by others to a pile driving machine, in operation in an adjoining lot. The Court charged the jury, "that if from the evidence, they believed Toulmin had performed the agreement on his part, and that on the erection of the building, there was no deficiency in the work, or in the materials, which occasioned the walls to fall, but that their falling was fairly attributable to some other cause, not created by Toulmin, or within his control; then they should find in his favor—otherwise, their verdict should be against him."

The defendants below, by their counsel, excepted to this charge of the Court, and assigned for error

here, that the charge was too general—that it was speculative and erroneous in law, and calculated to mislead the jury.

*Hitchcock* and *Gordon*, for plaintiff.
*Elliott & Crawford, contra.*

LIPSCOMB, C. J.—The facts of this case, as far as they can be collected from the record, are these:—Toulmin, the defendant in error, had undertaken to build the walls of a brick house for the plaintiffs in error. The walls were built, and a short time after the roof had been put on, the building fell down. This action was brought by Toulmin, to recover the price stipulated to be paid for it. The foundation for the walls, it is understood, was not to be made by Toulmin. It appears, from the bill of exceptions, that a great many witnesses were examined on the trial, and much contrariety of opinion expressed as to the cause of the falling of the walls. One of the walls was not plumb; and it was the opinion of some, that the wall was originally plumb, but that the bulge had been occasioned by the jarring of the earth, from the use of a pile driving machine, belonging to Mr. Hitchcock, on a lot adjoining, when the wall was only about eight feet high; and others were of opinion, that it was attributable to a defect in the roof. " The Court charged the jury, that if, from the evidence, they believed that Toulmin had performed the agreement on his part, and that in the erection of the building there was no deficiency in the work, or in the materials, which occasioned the walls to fall, but that the falling of the walls was fairly attributable to some other cause not

created by him, or within his control, then they should find in his favor—otherwise, their verdict should be against him."

The objection taken to this charge is, that " it is speculative, and erroneous in law," and calculated to mislead the jury; that under this charge, the jury might have thought, that if the pile driving machine had been the cause of the walls' falling, Toulmin would have been still entitled to a recovery, when it was his duty, under the contract, to have made good the defect in the wall when it occurred, and not to have progressed with the work until the defect had been repaired. It was not agreed, that this had been the view taken by the jury, but only that they might so have viewed it.

In *Chirac et al.* vs. *Reineker,*[a] Judge *Story*, in giving the opinion of the Court, objects to the charge of the Court below, on the ground that it was speculative, and on a hypothetical state of facts not warranted by the evidence; but his objection was, mainly, to its being erroneous in point of law.

In a case between the same parties in 11 *Wheaton*, 59, one of the grounds relied on was, that the Court below had erred in charging the jury erroneously in a hypothetical case, not warranted by the testimony. Chief Justice *Marshall* in giving the opinion of the Court, recognizes the power of the Court to revise such a case, and reverse it, if such erroneous charge had an influence in procuring the verdict of the jury. I infer from the tenor of his remarks, that to make it a ground of reversal, there must be a concurrence of error in point of law, in the charge given, and an influence on the jury in forming their verdict. If given under such circum-

[a] 2 Peters R. 625.

stances, as not to influence them, it would not be a sufficient ground for the reversal.

In the case of *Lyon et al.* vs. *The Huntington Bank*,[a] several bonds were assigned to the Bank [a12Serg.& Rawls 61] with powers of attorney to confess judgment, (and this was done at the request of the Bank,) as collateral security, as well for the Bank as for the endorsers of a note discounted by the Bank. The Bank had possession of the bonds so assigned. The defence set up was the negligence of the Bank in not collecting the bonds so assigned; the judge in the Court below, charged the jury, that the not entering judgment on the bonds and issuing executions was as much the fault of the endorsers, as the Bank. The Supreme Court reversed this judgment, and Chief Justice *Tilghman*, in giving the opinion of the Court, rests the reversal mainly on the ground, that the charge given was wrong in point of law, and on a question material to the endorsers. The bonds were in possession of the Bank, and the endorsers had no control over them. If there was any agreement by which the Bank was relieved from using diligence in the collection of the bonds, it was incumbent on it, to make that fact out in evidence. This case was not decided on the ground of the charge being speculative, but that it was wrong on a point material to the endorsers.

The conclusion to be drawn from these cases, seems to me, to be, that to make a decision of an abstract question, not called for by the testimony, ground of a reversal, it must be wrong in point of law, and must have had an influence on the jury in forming their verdict: much stress seems always to be laid on the last. How the Court in *Chirac* v. *Reinecker*,

(before referred to) came to the conclusion, that the uncalled for opinion, on an abstract question, had an influence on the jury, does not appear from the record, further than may be collected from the fact, that the charge was made at the request and in the precise language of the party, who obtained the verdict; the inference from this circumstance is very strong, that the charge had the influence ascribed to it.

In the case of *Barton* vs. *Glasgow*,[a] the doctrine is laid down, that if the Court is not called on to charge the jury on a particular point, and in its general charge lays down the general principles of the law correctly, the judgment will not be reversed, because a more pertinent charge might have been given. If there are particular circumstances to exempt the case from the operation of a general rule, it is the business of counsel to ask the opinion of the Court, of the law on those circumstances.

[a] 12 Searg. & Rawle, 149.

In the case of *Pennock and Sellers* vs. *Dialogue*,[b] the evidence was set out in the record, and the question was raised, that it called for other and explanatory directions to the jury than were contained in the charge of the Court below. Judge *Story*, in giving the opinion of the Court, says, that it is no ground of reversal, that the Court below omitted to give directions to the jury on any points of law which might arise in a cause, where it was not requested by either party at the trial. It is sufficient for us, that the Court has given us erroneous directions. If either party deems any point presented by the evidence, to be omitted in the charge, it is competent for such party to require an opinion of the Court upon that point. If he does not, it is a waiver of it. Let

[b] 2 Peters, 15.

us apply the principles of the case cited, to the one under consideration.    Is the charge of the Court below, speculative and erroneous in law : and if it is, has a reasonable ground been shewn from which to infer that it had an influence on the jury in forming the verdict?

The charge of the Judge must be taken altogether, if we wish to arrive at its true meaning : it is not to be detached, and separate members of the same sentence to receive a construction as though it stood unconnected with other members or branches of the sentence.    The charge must also be applied to the state of facts presented by the record.    The evidence shewed that the house had fallen, after it had passed from the hands of Toulmin.    Then, in the language of the Judge's charge, if he had performed the agreement on his part, he  was entitled to recover. This part of the charge, that if he had performed the agreement on  his part, is very comprehensive ; it would embrace every thing that the law of his agreement required: any failure, the least possible under this instruction, would prevent a recovery.    It was so far strictly appropriate and pertinent to the facts disclosed by the record.    Let us see if the subsequent parts of the charge convey a different meaning. The Judge, after telling the jury what was required by the agreement, by way of illustration, says, that if the falling of the wall was fairly attributable to some other cause not created by him, or within his control, he was entitled to recover—meant nothing more than, if after such fulfilment of his agreement in every thing that the law required, the wall had fallen, he was not accountable—that his risk extended no further than to the completion of the work he

had undertaken. If there had been a different state of facts, and Toulmin had attempted to excuse himself from performance, the Judge's charge would then have been fairly obnoxious to the objections taken, as nothing would excuse for a non-performance—not even the acts of God. If the walls, before they were finished, had been prostrated by a storm, an earthquake, or any other cause, the contractor would still be bound to finish them according to contract.

This, however, is nothing like the state of facts presented. It is to the last branch of the charge, that the plaintiffs in error ground their objections, and contend that it would authorise the jury to excuse Toulmin from the effects of the machine for driving piling on the walls. If the operation of the machine, had the effect to bulge the wall, not from any defect in the foundation. Toulmin was certainly bound to repair it; but if this deleterious effect on the wall was produced from a want of a good foundation, he would not be accountable for it. If he failed in doing any thing the law of his contract required of him, he had not performed and had not brought himself under the Judge's charge. It is true, that he may have had no control over the machine that some of the witnesses supposed occasioned the defect in the wall, but he had a control over that defective wall. If, therefore, the last part of the Judge's charge should be carried back, and construed to relate to the period whilst the work was in progress, it is altogether consistent, and did not authorise the jury to relieve Toulmin from any thing that his contract required.

If the charge was too general and not sufficiently explicit on any point, and the plaintiffs in error had been under any apprehension that it would not be

sufficiently understood by the jury in applying it to a particular point in their case, it was their province to ask the Court to instruct the jury on the law, as applicable to such point. They should have asked the Judge to instruct the jury, that if they believed, the falling of the wall was in consequence of its being thrown out of place by the jarring produced from the operation of the machine, and that this was not from a want of a good foundation, that Toulmin was not entitled to recover. The Judge would have been fully apprised of the point wished to be presented, otherwise he could not know to what part of the charge the exception was taken. This view is fully supported by the case of *Pennock & Sellers* vs. *Dialogue*.

We should not be astute in seeking grounds for reversing the judgments of Courts below : if there is an ambiguity we should incline to support the judgment, rather than to reverse ; and in all cases, if the error is not clear from the record, we should affirm. The party seeking a reversal must be specific in shewing the error complained of. It is not sufficient that there may have been error: it must be shewn to have intervened.

The Court was not requested to give any particular charge : but the charge was a general one, in which it seems to me the general principles of the law of the case were correctly laid down. It is neither speculative, nor erroneous. It was not as explicit as the testimony would have authorised; but this is no ground of reversal.

COLLIER, J.—I am of opinion that the judgment of the Circuit Court should not be sustained. The

charge of the Judge seems to me to proceed upon the hypothesis that the failure of a party to perform an express covenant may be excused by shewing that he was prevented by the interference of a third person over whose acts he had no control. The converse is too well settled to require discussion at this day, and is not denied in the opinion of the majority.[a] The proof went to shew that, in the opinion of some of the witnesses, the wall received an injury while in the progress of erection, by the operation of a pile driving machine contiguous to it, employed by another person, which occasioned its fall. If the wall received an injury while incomplete, and the defendant, without repairing the injury, went on to complete it, he certainly did not satisfy the stipulations of his contract : and the charge of the Court, by which the jury were informed that if the fall was produced. by an agency over which the defendant had no control, was equivalent to saying, if the fall resulted from the employment of the pile driving machine the plaintiffs were not entitled to recover.

The idea that it is not error if a Court omit to instruct the jury upon all the questions of law which the facts elicit, unless particularly requested, is certainly well founded ; and to that effect is *Pennock et. al.* vs. *Dialogue.*[b] But neither of these cases, or any other within the scope of my reading, goes the length of determining, that if the charge, as applicable to the facts, is erroneous, that the judgment shall nevertheless be sustained, because the Court was not requested to modify it.

But if I have misconceived the charge in supposing it to be erroneous in point of law, I certainly cannot be mistaken in attributing to it a direct ten-

[a] 1 Peter's C.C. R.83 and 221— 6 Durn. & East, 650, 750 Wheaton's Selwin.

[b] 2 Peter's Rep.15; 12 Searg. and Rawle.

dency to mislead the jury, by inducing them to believe that if the fall was occasioned by the pile driving machine the defendant was not liable; and if such was its most probable effect the judgment is erroneous.ₐ

a 2 Peter's 625.

In every view in which I can consider this case, I think the judgment should be reversed.

CRENSHAW, J. not sitting.