# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## NORTHERN DISTRICT, JULY TERM, 1847.

### SUNBURY.

---

## McCay *v.* Burr.

A defendant is precluded from supplying a deficiency in his notice of special matter, by embodying, with it, the omitted matter in a special plea.

The use of an invention by special permission of the patentee, is not, under the act of Congress, a use of it by the public.

A right to an invention, like every other right, may be dedicated, surrendered, or abandoned to the public; and when so dedicated, surrendered, or abandoned, it can never be resumed.

Where the original inventor of a new and useful plan to construct bridges, gave a special parol license to two persons to build bridges on his plan, before his patent had been actually taken out; *it was held* not to be an abandonment of his right.

In error to the Court of Common Pleas of Northumberland county.

*July* 5. This was an action of debt on bond, brought by Henry M. Burr, against William McCay. On the trial of the cause, the plaintiff gave in evidence the bond, or rather agreement, dated 5th of March, 1829, executed by the defendant, and delivered to the plaintiff, and which was as follows:

"I agree to pay Henry H. Burr five hundred dollars, as a compensation for the one equal half of a patent-right obtained by his father, Theodore Burr, on the 3d day of April, A. D. 1817, for the exclusive right to build bridges, according to the said letters patent.

"The condition of the above obligation is such, that if William

147

McCay does prosecute at law, or otherwise, so as to establish the right of said patent; and pay, or cause to be paid, all costs which may accrue in trying the validity of said patent, and it is made clear and explicit that the said patent conveyed this day to the said McCay, belonged wholly to the said Henry Burr, in his own exclusive right; and that the particulars described in said patent, and claimed as the invention of Theodore Burr, after complete investigation at law, it does appear that the said T. Burr was the discoverer or inventor of the particulars claimed in said patent; and that there is no act or neglect of the said Henry H. Burr, or any of the persons he, the said Burr, holds under, will bar the recovery of damages from persons who have violated the right of said patent-right, from its date to the present time, then the above obligation to be valid; otherwise, to be void and of no effect."

The defendant pleaded *payment, with leave to give the special matter in evidence*, and then read his notice of special matter, which set forth, that under said plea he intended to prove that there were acts and neglect, on the part of Theodore Burr, the original inventor, under whom the plaintiff claimed, which barred the recovery of damages from persons who had violated the alleged right of said Theodore and Henry H. Burr, to and under said patent, before the 5th of March, 1829, the date of the bond; that the said Theodore, in the spring and fall of 1816, and in the spring of 1817, and at other times, neglected to claim his alleged right to said patent invention, against James Lee and Reuben Fields, and the Lewisburg Bridge Company, then about to build, and building a bridge over and across the West Branch of the Susquehanna, opposite the town of Lewisburg, and extending from the bank of the said west branch at Lewisburg, in Union county, to the opposite bank in the county of Northumberland, and that the said Theodore not only so neglected his claim, but relinquished the same, and assented to the building of the said bridge at the times and counties aforesaid, and at other times between the 1st day of April, 1816, and the 1st day of December, 1817. And the defendant denies that the full and exclusive right to said patent was, or could be, established to be in the said plaintiff, and admits none of the other averments or allegations in plaintiff's declaration, but notifies the plaintiff to prove the same.

The defendant then called James Lee, to prove the facts contained in the above notice, who testified, that "in the spring of 1816, Theodore Burr was at my house in Northumberland, and it was talked between him and me about the Lewisburg bridge—the

allotting. I asked Mr. Theodore Burr whether he proposed building that bridge ; he told me not—that he had enough bridges on hand to attend to. He then mentioned *Reuben Fields* being a first-rate mechanic in wood, and said he had worked with Burr at the Harrisburg bridge, and that I had better go down and see Mr. Fields, and put in with Fields for building the bridge. This was in the spring of 1816—I think in the month of May. I went on to Harrisburg; I saw Mr. Fields, and being introduced to him, he came up to Lewisburg the week following. This was before the letting, made to ascertain if materials could be got for building. He returned to Harrisburg. He came up again a few days before the letting, and brought up a *plan* and *draft* of the Lewisburg bridge. Theodore Burr advised Fields and me to build on that plan. We presented the plan to the Lewisburg Bridge Company, July 3d, 1816, together with our proposals for building the bridge. On the day following, the 4th of July, Mr. Hepburn drew the contract between the Lewisburg Bridge Company, and me and Fields, and on the 7th of July, we commenced excavating the foundation for stone work. The same season, T. Burr came up to Lewisburg, while we were at work; we had got up two piers, and two abutments about *half-way*. I think in September, or later, Mr. Burr appeared very much pleased with it; said nothing then about the wood work. Mr. Fields came up that fall to commence the wood work. He had finished for Mr. Burr, at Harrisburg. Early the next spring one of the reaches was up, and another part raised on the east side, when Burr came up. He said nothing about his patent-right at that time. I saw him in the fall of the same year, 1817; the bridge was then passable for teams, or perhaps not quite so. The superstructure was up, it was passable, and teams crossed it November 1, 1817. I moved to Lewisburg 1st of April, 1818. Mr. Burr came to my house in April, 1818, or May; he then spoke of his patent-right, and said the Lewisburg Bridge Company ought to give him something, because it was his right of building the bridge—the patent-right was his. I said to Burr, 'as we had exhibited his plan of a bridge, which you recommended to us, and if you call on the Bridge Company for any thing, they will call on Fields and me.' He then made reply, '*I'll not interfere with Fields and you; and as to you, James, I give you a right to build bridges on my patent-right plan.*' For fear I would be disturbed in building the bridge at Delaware, James Patterson gave me his deposition in 1825, to prove the privilege which Burr gave me. I gave the affidavit to Mr. Greenough.

" I can't recollect that Mr. Burr mentioned any thing about his patent-right till he dined at my house.' I don't recollect of hearing him mention it while the work was going on. In the forepart of the summer, 1816, Burr had no *right;* but he recommended that *plan* then."

The defendant then offered to prove that Theodore Burr commenced building the Northumberland bridge in 1812, which was to be finished in two or three years, and in 1814 he commenced the Harrisburg bridge, and completed it in two or three years ; that before 1812, in the state of New York, he built, by his own acknowledgment, another bridge, all substantially on the same principle as the Lewisburg bridge, and as set forth in his patent. This evidence was offered for the purpose of showing a public user with Burr's knowledge and assent, and an abandonment by him of his right. The plaintiff objected to the evidence offered, on the ground that it was irrelevant, and not contained in the notice of special matter. The court sustained the objection and rejected the evidence, which constituted defendant's *first* bill of exception. The defendant then asked leave to file the following special plea : " The defendant pleads that the said Theodore Burr abandoned *to the* public the use of his alleged invention and discovery, for seven years before the date of his patent, (April 3, 1817,) that in the years 1812, '13, '14, and '15, he erected bridges upon the same principle, at Northumberland, and at Harrisburg, and also, previously to these years, in the state of New York ; and that therefore his said patent was void and invalid." The plaintiff objected to the filing of the special plea, because it should have been embraced in the notice of special matter ; and because the matter contained therein was irrelevant, and if permitted to be filed, it would evade the rule of court requiring thirty days' notice. The court (ANTHONY, P.) said, they were satisfied that the special plea was offered to be filed, for the purpose of curing an omission in the notice, and to enable the defendant to do, indirectly, that which the court had decided he could not do directly, and therefore refused the permission asked to file the said plea. This was defendant's *second* bill of exception.

The plaintiff then offered the record of a suit, in the District Court of the United States for the Western District of Pennsylvania, which was brought to June Term, 1829, by Henry H. Burr, against the Danville Bridge Company, for the violation of the patent right mentioned in said bond, and the verdict dated October 11, 1833, for the plaintiff, on which judgment was entered January 15, 1834, for plaintiff, $2700. This evidence was offered by the

plaintiff for the purpose of establishing the validity of the patent by a trial at law. And the plaintiff further offered in evidence a power of attorney given by Henry H. Burr and William McCay on the 16th of October, 1835, to Randall Wilcox to collect money from those who had built bridges, &c., in violation of the patent, bringing suit, &c.

He also offered an act of Assembly, dated April 1, 1836, granting $7500 to Burr and McCay, (the plaintiff and defendant,) for certain bridges, aqueducts, &c., built by state authority on the plan of Burr's patent.

Also the certificate of the state treasurer that he had paid them the $7500 granted by the Commonwealth for the purpose of showing that the defendant claimed under the patent-right aforesaid.

To all and singular of the evidence thus offered by the plaintiff, as above stated, the defendant objected; but the court overruled the objections, admitted the evidence, and sealed the *third*, *fourth*, and *fifth* bills of exception of the defendant. The plaintiff here closed. The defendant then, as rebutting evidence, asked leave to add the plea of *set-off*, for the purpose of showing under it, that the plaintiff was indebted to the defendant in a large sum of money, which was lent, and advanced to, and paid and expended for the plaintiff, by the defendant, and which was totally unconnected with the transactions of which there was evidence then before the court. This evidence, under the plea of set-off, if permitted to be added, was offered for the purpose of proving payment of plaintiff's demand against the defendant. To the plea, and the evidence intended to be offered under it, the plaintiff objected, and the court sustained the objection, and sealed defendant's *sixth* bill of exception. The defendant then offered, and read in evidence, under objection by the plaintiff, the deposition of Jacob Hibler, together with extracts from the books of the Danville Bridge Company, a certificate of money paid by the Danville Bridge Company, amounting to about $650, for the purpose of showing that the suit of Burr against said Bridge Company was *compromised* before judgment was rendered. E. Greenough was also examined by the defendant as a witness to prove the *compromise*, and the defendant then read in evidence the record of a suit brought by Henry H. Burr against the Lewisburg Bridge Company, on the 3d of April, 1837, for the infringement of Burr's patent, which was tried by a jury on the 22d June, 1841, and a verdict rendered for the defendants, on which the judgment was entered June 26, 1841.

The defendant excepted to the charge, and prayed the court to

file the same. The jury found a verdict for the plaintiff; where-upon the defendant sued out this writ of error, and assigned gene-rally the admission and rejection of evidence, as embraced in his bills of exception, and the whole charge of the court, for error here.

*Bellas* and *Hegins*, for plaintiff in error.—The first error as-signed embraces the defendant's first bill of exception, which was to the rejection of evidence offered to show a public user of Burr's plan to build bridges, and that, too, with his knowledge and assent, and consequently of his abandonment of his invention. The evidence offered was objected to by the plaintiff, Burr, because it was irrelevant, and because it was not in the notice of special matter given by the defendant. The notice of special matter was not more general than the declaration of plaintiff. Had the special matter contained in the notice been a plea, and plaintiff had demurred to it, he would have failed, as he had committed the first error? How special must the notice be? To this point he cited 4 Whart. 311; Evans *v.* Kramer, and Evans *v.* Eaton, 1 Penna. Rep. 215, 322, 338; 4 Cond. Rep. 291; McDowell *v.* Meredith, 4 Whart. 311. The court should have permitted the defendant to have filed his special plea. This was objected to on the ground that it was de-signed to supply a deficiency in notice of special matter. Had the objection been that it was to supply a defect in a plea, it would obvi-ously have been error to sustain the objection. Upon principle, then, and common sense, why should not a defect in special matter be cured? When, through informality, the merits of the cause will be affected, the plaintiff will be permitted to amend his declaration, or statement, and the defendant may alter his plan or defence on or before the trial of the cause. The remedy for the plaintiff and de-fendant is, under the act, equal and co-extensive; Act of March 21, 1806. Suppose no plea but payment pleaded; surely defendant might add another: as, for instance, that Burr, the plaintiff, was not the inventor, the right never having been tried, as he contended. Then if the defendant pleaded payment, with leave to give the special matter in evidence, and neglected to give any notice of special matter, surely he can put in a special plea setting out his defence. Plaintiff may amend without notice—why not defendant? He here cited Sharp *v.* Sharp, 13 Serg. & Rawle, 444; Wilson *v.* Erwin, 14 Serg. & Rawle, 176.

*Jordan* and *Greenough*, contrà, cited Franklin *v.* Mackay, 16 Serg. & Rawle, 117; Wilson *v.* Erwin, 14 Serg. & Rawle, 176; 8 Watts, 37; 10 Watts, 246; 4 Cond. Rep. 100.

*July* 20. GIBSON, C. J.—There are, in this case, so·many nice, and, for precedents, useless exceptions, that to examine them with a microscopic eye, would be unprofitable and oppressive; and we say no more in respect to them than that they are unfounded. Yet in order to leave no doubt about a particular point of practice involved in the trial, it is proper to remark, that the defendant was precluded by the later and better interpretation of the act of 1806, from supplying the deficiency in his notice of special matter, by embodying with it the additional matter in a special plea. The point had been decided differently in Sharp *v.* Sharp, 13 Serg. & Rawle, 444; but it was reconsidered in Wilson *v.* Erwin, 14 Serg. & Rawle, 176, and settled more consonantly to the spirit, if not to the letter, of the statute.

The exceptions to the charge are likewise unfounded. The action was brought on a bond, or rather an agreement, to pay the plaintiff a round sum if he should succeed in establishing the legal validity of Theodore Burr's patent for the plan of a bridge; in recompense of which, the defendant was to become joint owner of it with the plaintiff who had derived the right from the patentee. The defendant brought an action in the plaintiff's name for an invasion of it against the Danville Bridge Company, and obtained a verdict and judgment by compromise, which the court properly ruled to be presumptive evidence of the originality of the invention, and left to the jury the question of abandonment raised by evidence that the patentee had given a parol license to two persons to build bridges on his plan before his patent was actually taken out. It is argued that he ought to have ruled it to be an abandonment, as a conclusion of law. But though it is true that an invention or discovery, like every other right, may be irrevocably surrendered or dedicated to public use, what ground was there for such a conclusion in this case? In Pennock *v.* Dialogue, 2 Peters, 16, it was said that the words in the act of Congress, "not known or used before the application," mean not known or used by the public at large; but the use of an invention by special permission of the patentee, is not a use of it by the public. If the author of an invention were bound to patent it before its properties had been published and established by actual use, a great part of his time might expire before he could make it profitable to himself. In this very instance, it appears that the patentee proposed his invention severally to the Harrisburg and to the Northumberland Bridge Companies; by each of whom it was rejected in favour of a very inferior one, because the other had not then been tested by practice. A right abandoned to the public,

doubtless, cannot be resumed; but a license restrained to individuals, is not an abandonment. Except the verdict in the case of the Lewisburg bridge, the other parts of the evidence raised questions rather of fact than of law; but that verdict, being a general one, and determining no more than that the action was barred by the matter contained in some one of the pleas—the statute of limitations among the rest—could not be said with any certainty to disaffirm the validity of the patent. This appears to be the substance of the case, and we find no error in it.

Judgment affirmed.