**ALASKA CREDIT BUREAU OF JUNEAU v. FENNER.**

No. 5925–A.

United States District Court, Alaska First Division, Juneau.

Oct. 14, 1948.

William L. Paul, Jr., of Juneau, Alaska, for plaintiff.

John C. Hughes, of Kodiak, Alaska, and Howard D. Stabler, of Juneau, Alaska, for defendant.

FOLTA, District Judge.

The question raised by the demurrer to the complaint is whether this action, commenced July 7, 1948, is barred by the local statute of limitations. The complaint sets forth ten causes of action which, it is alleged, accrued in the State of Washington at various times between October 22, 1938, and February 20, 1948. It is further alleged that defendant "subsequent to July 11, 1942, left the State of Washington and came to Alaska and he has ever since been beyond the jurisdiction of the courts of the State of Washington and within the jurisdiction of the courts of the Territory of Alaska," and that the right of action in each instance has been assigned to the plaintiff.

Decision of the question presented turns not upon whether the local statute of limitations has run for the full period, which does not appear upon the face of the complaint, but upon whether an action accruing in another jurisdiction between non-residents of Alaska may nevertheless be maintained against the defendant after he enters or establishes a residence in Alaska before the action is barred in the jurisdiction of his former residence where it accrued and before it is barred by the statute of limitations here.

The two cases cited by counsel are of little value in determining this question. It is agreed that the action is subject to the limitation of six years, prescribed by Sec. 3356, C.L.A. 1933, but a determination of the question involves a consideration of Secs. 3365 and 3374, C.L.A. 1933, which are as follows:

Sec. 3365. "If, when the cause of action shall accrue against any person who shall be out of the Territory or concealed therein, such action may be commenced within the terms herein respectively limited, after the return of such person into the Territory or the time of his concealment; and if, after such cause of action shall have accrued, such person shall depart from and reside out of this Territory, or conceal himself, the time of his absence on concealment shall not be deemed or taken as any part of the time limited for the commencement of such action."

Sec. 3374. "When the cause of action has arisen in any state, territory, or country between nonresidents of this Territory, and by the laws of the state, territory, or country where the cause of action arose an action can not be maintained thereon by reason of the lapse of time, no action shall be maintained thereon in this Territory."

Sec. 3365, in common with like statutes in practically every state, is based on Chapter 16, Sec. 19, of the Statute of Anne, which declares, in substance, that if any person against whom there should be any cause of action, was at the time such action accrued beyond the seas, the action might be brought against him on his return within in the time limited for bringing such action. 54 C.J.S., Limitations of Actions, § 208, page 230; Burrows v. French, 34 S.C. 165, 13 S.E. 355, 27 Am.St.Rep. 811. While the statutes of the various states differ somewhat in phraseology, particularly in that for the words "beyond the seas" words equivalent in meaning to "out of the state" have been substituted, they have, by the overwhelming weight of authority and better reasoning, been construed to apply not only to residents but also to those who had never resided in the jurisdiction of the forum. This has been the construction given the Statute of Anne in England ever since its

enactment. In a few jurisdictions, however, the Statute of Anne has been expressly modified so as to limit its application to residents, but in the absence of express language to that effect, it is uniformly held that the statute applies to residents and non-residents alike, 54 C.J.S., Limitations of Actions, §§ 210, subsec. b, 212, c (2) pages 231, 236, 237; 34 Am.Jur. 181-2; Sec. 224, and the authorities there cited notwithstanding the obvious implication arising from the use of the word "return" in the statute. Such a construction merely gives effect to the rule that where statutes, especially those of the character of the statute of frauds and the statute of limitations, have been adopted from England, the known and settled construction of such statutes by the courts of that country is considered as silently incorporated into the law of the adopting jurisdiction. Pennock v. Dialogue, 2 Pet. 1, 18, 7 L.Ed. 327; Cathcart v. Robinson, 5 Pet. 264, 280, 8 L.Ed. 120; McNally v. Hill, 293 U.S. 131, 136, 55 S.Ct. 24, 79 L.Ed. 238; Coad v. Cowhick, 9 Wyo. 316, 63 P. 584, 585, 586, 87 Am.St.Rep. 953; Kirkpatrick v. Gibson, Fed.Cas.No. 7,848. And mere differences in phraseology employed by the adopting jurisdiction do not warrant a different construction. McDonald v. Hovey, 110 U.S. 619, 621-630, 4 S.Ct. 142, 28 L.Ed. 269; Pennock v. Dialogue, supra, 2 Pet. at page 20, 7 L.Ed. 327; Burnes v. Crane, 1 Utah 179; Angell on Limitations, Sec. 21. Of the many decisions which support the rule that statutes of limitation based on the Statute of Anne, similar to that here involved, are not to be confined to residents, the leading state case appears to be Ruggles v. Keeler, 1808, 3 Johns, N.Y., 263, 3 Am.Dec. 482, in which Chief Justice Kent, speaking for the Court, said:

"The first question which naturally arises is, whether the act of limitations of this state can be interposed in bar to the matters contained in the set-off.

"The act requires that all actions founded upon any contract, without specialty, shall be brought within six years next after the cause of action accrued. These words would, undoubtedly, unless controlled by the exception in the statute, apply even to the case of foreigners, and to causes of action arising abroad. The statute of 21 Jac. 1, was so understood by Lord Ch. Cowper, in the case of Duplein v. De Roven, 2 Vern. 540, which arose shortly before the statute of Anne, and he observed that 'it was plausible and reasonable, that the statute of limitations should not take place, nor the six years be running, until the parties came within the cognizance of the laws of England; but that must be left to the legislature.' But a proviso in the statute of Anne, and which we have adopted in our act of limitations, saves the operation of the statute, if the party shall be 'out of the state' at the time the cause of action arises against him, and the statute does not begin to run until 'after the return' of the defendant. Whether the defendant be a resident of this state, and only absent for a time, or whether he resides altogether out of the state, is immaterial. He is equally within the proviso. If the cause of action arose out of the state, it is sufficient to save the statute from running in favor of the party to be charged, until he comes within our jurisdiction. This has been the uniform construction of the English statutes, which also speak of the return from beyond seas of the party so absent. The word return has never been construed to confine the proviso to Englishmen who went abroad occasionally. The exception has been considered as general, and extending equally to foreigners who reside always abroad. This was evidently the opinion of Lord Talbot in the case of Duplein v. De Roven. In Strithorst v. Greame, 3 Wils. 145; 2 Black.Rep. 723, S.C., the point was so ruled by the court of C.B. in England.

"The party to be charged by the set-off, not having been six years within this state since the cause of action arose, our statute of limitations could not, therefore, be replied to the plea."

To the same effect are: Murray's Lessee v. Baker, 3 Wheat. 541, 544, 4 L.Ed. 454; Shelby v. Guy, 11 Wheat. 361, 365, 6 L.Ed. 495. Typical cases construing such clauses in the statutes of the various states which follow the English rule are: West v. Theis, 15 Idaho 167, 96 P. 932, 17 L.R.A., N.S., 472, 128 Am.St.Rep. 58; Palmer v. Shaw, 16 Cal. 93; McKee v. Dodd, 152 Cal. 637,

93 P. 854, 14 L.R.A., N.S., 780, 125 Am.St. Rep. 82; King v. Lane, 7 Mo. 241, 37 Am. Dec. 187; Burrows v. French, 34 S.C. 165, 13 S.E. 355, 27 Am.St.Rep. 811; Cvecich v. Giardino, 37 Cal.App.2d 394, 99 P.2d 573; Annotation to Jamieson v. Potts, 25 L.R.A., N.S., 24; Stanley v. Stanley, 47 Ohio St. 225, 24 N.E. 493, 8 L.R.A. 333, 21 Am.St. Rep. 806; Hartley v. Crawford, 12 Neb. 471, 11 N.W. 729; Bean v. Rumrill, 69 Okl. 300, 172 P. 452, 458; John v. John, 307 Mass. 514, 30 N.E.2d 542; Burnes v. Crane, 1 Utah 179. For a further discussion of the history of the Statute of Anne and a review of the authorities construing the clauses excepting its operation in cases of absence or non-residence see Mason v. Union Mills Paper Mfg. Co., 1895, 81 Md. 446, 32 A. 311, 29 L.R.A. 273, 48 Am.St.Rep. 524.

Sec. 3365 was one of the sections of the Civil Code enacted by Congress for Alaska June 6, 1900, 31 Stat. 321. It was apparently adopted from Oregon, Hills Annotated Laws, Sec. 16. That section, which is identical with ours, came before the Supreme Court of Oregon in McCormick v. Blanchard, 1879, 7 Or. 232. Both parties were residents of Illinois when the cause of action accrued, but defendant became a resident of Oregon about three years before he was sued there. When the action was commenced in Oregon more than six years had elapsed since it had accrued in Illinois. The Court held that Sec. 16 (our Sec. 3365) began to run from the time the action accrued rather than from the time the debtor arrived in Oregon. This doctrine that the exceptions in the statute did not apply to non-residents was followed in Crane v. Jones, 1893, 24 Or. 419, 33 P. 869, and in Van Santvoord v. Roethler, 1899, 35 Or. 250, 57 P. 628, 76 Am.St.Rep. 472. But the doctrine was practically repudiated in Jamieson v. Potts, 55 Or. 292, 105 P. 93, page 94, 25 L.R.A., N.S., 24, in which the Court said:

"To reach this conclusion (that the statute of limitations of Oregon began to run from the time the cause of action accrued in Illinois and not at the time Blanchard entered Oregon) the provisions of section 16 were considered in connection with section 26 (our Sec. 3374), and the former was held to apply to residents only. We are now of the opinion that the court, in so holding, entirely misapprehended the state of the law and the purpose and intent of enacting section 26. Both of these sections are parts of the act of 1862; but prior to the date of the act the substance of section 16 had been incorporated into the statute law of England and some of the states of this country, and the significations of the words there employed had been judicially determined with practical unanimity. In the case of Ruggles v. Keeler, 3 Johns., N. Y., 263, 3 Am.Dec. 482, the question was raised upon the construction of the proviso in the statute of New York (Rev. Laws N. Y. 1802, p. 563), which was adopted from the statute of Anne, and of which ours is a substantial enactment. It underwent the scrutiny of that pre-eminently learned and enlightened court, of which Kent was the Chief Justice, who rendered the opinion in that case, and reviewed the English authorities with his usual great ability and learning, and reached the conclusion that the statute under consideration included nonresidents as well as residents. 'This,' he says, 'has been the uniform construction of the English statutes, which also speak of "the return" from beyond seas of the party so absent. The word "return" has never been construed to confine the proviso to Englishmen who went abroad occasionally.' The rule there announced has been reasserted and followed by the Supreme Court of the United States, and also by state courts, in numerous decisions upon statutes substantially the same. Murray's Lessee v. Baker, 3 Wheat. 541, 4 L.Ed. 454; Shelby, Executors, v. Guy, 11 Wheat. 361, 6 L.Ed. 495; Hall v. Little, 14 Mass. 203; Wilson v. Appleton, 17 Mass. 180; Hastings v. Pepper, 11 Pick., Mass., 41; Jones v. Jones, 18 Ala. 248; Dunning v. Chamberlin, 6 Vt. 127; King v. Lane, 7 Mo. 241, [37 Am.Dec. 187]; Kempe v. Bader, 86 Tenn. 189, 6 S.W. 126.

"Now, under such known state of the law, 'must not the Legislature,' says Mr. Justice Wheeler, in an able dissenting opinion, rendered in Snoddy v. Cage, 5 Tex. 105, 117, erroneously cited and referred to in McCormick v. Blanchard, supra, as 3 Tex. 106, 'be supposed to have adopted those words with the meaning which had thus been attached to them by judicial construction? Is it reasonable to suppose that they intend-

ed the application to this section of the statute of a different rule here from that which a known judicial construction had given to the same language elsewhere?' The first query has been answered many times by this court in the affirmative, which is consonant with the emphatic and pronounced declarations of most, if not all, courts. * * *

"Now, in the case of McCormick v. Blanchard, supra, it was not necessary to overturn this well-recognized principle of construction and ignore the judicial interpretation previously given to section 16 in those jurisdictions from which it was taken, in order to arrive at the decision reached in that case, for to give it such a construction would not have rendered section 26 nugatory, as assumed, nor does the enactment of the latter section, in conjunction with the former, indicate any legislative intent to impress upon the former any different interpretation than what it had received in other jurisdictions from which it was taken; but, on the contrary, as we now understand it, the presence in the statute of the latter section points strongly to a legislative intent that the received construction of section 16 was considered as accompanying the statute and forming an integral part of it."

In later cases the doctrine of McCormick v. Blanchard was reaffirmed and may now be said to be the settled law of Oregon.

The precise question has been before the courts of Alaska but twice. In Van Schuyver v. Hartman, 1 Alaska 431, decided twenty-three years after McCormick v. Blanchard, upon facts practically identical with those of the case at bar, the Court held in accordance with the weight of authority that Sec. 3365, C.L.A. 1933, began to run not from the date the cause of action accrued in Oregon but from the date of the removal of the defendant to Alaska. However, in Murray v. Farrell, 2 Alaska 360, decided in 1905, the doctrine of McCormick v. Blanchard was followed.

Assuming that Sec. 3365 was adopted from Oregon, the presumption would ordinarily have to be indulged that it was adopted with the settled and known construction which it had received prior to its incorporation into the Act referred to. But where the statute is, because it deals with a subject of universal concern, not peculiar to the jurisdiction from which it was adopted and is based on a statute of England which, with varying phraseology, has been incorporated into the laws of other jurisdictions, where it has been given the same construction as in the country of its origin, there is a strong presumption that it was the intent to adopt such construction. It would therefore appear that this is not simply a case in which one presumption competes with a countervailing presumption for recognition, but one in which the question to be decided is whether Congress intended to adopt the construction given the statute in Oregon or that given it in England and the courts of this country for more than a century before. Aside from the ·fact that the Oregon rule is contrary to the weight of authority, it may well be questioned whether it could be said that at the time of the adoption of Sec. 3365 as one of the 368 sections of the Act of Congress of June 6, 1900, 31 Stat. 321—552, the construction given it in Oregon was either settled or well known in view of the fact that it was not till In re Wemple's Estate, 92 Or. 41, 179 P. 674, 675, was decided in 1919 that the doubts raised by Jamieson v. Potts as to the scope and effect of McCormick v. Blanchard, supra, could be said to be laid at rest. Moreover, it appears that the decision of that case was influenced in part at least by a decision of the State of Texas, which had adopted a like construction as a matter of policy to attract settlers.

As has already been pointed out, the construction uniformly given the Statute of Anne by the courts of England and this country is that the clauses excepting the operation of the statute apply to residents and non-residents alike. It would, therefore, seem that in 1900 Congress was more likely aware of the construction which the Statute of Anne had received in England and in this country for more that one hundred years than that it was aware that Oregon had given a contrary construction to one of the 368 sections of the bill later enacted into the Act of June 6, 1900.

Moreover, there are other reasons why the Oregon rule should not be given effect in Alaska. It would limit the applicability of Sec. 3365 to those who were present in the Territory when the contract sued

on was made and later absented themselves or became non-residents but returned into the Territory and remained long enough to be served with process. Not only does it seem that this would be an unreasonable restriction of the scope of the statute, but it would result in giving unwarranted preference to those who were non-residents at the time the contract was made or the cause of action accrued; see note to McNamara v. McAllister, 34 L.R.A., N.S., 436; Western Coal & Mining Co. v. Hilvert, 63 Ariz. 171, 160 P.2d 331, 336; Robinson v. Moore, 76 Miss. 89, 23 So. 631, 633. Moreover, it would seem that such a construction would render Sec. 3374 quite superfluous. The provision of that section is one of limitation. It is in pari materia with Sec. 3365. What is there for such a limitation on which to operate under the Oregon rule that the exceptions of Sec. 3365 are applicable to residents only? If Sec. 3365 is restricted in its application to residents only, it is obvious that no case could arise in Alaska to which the limitation of Sec. 3374 could apply. The very language of Sec. 3374 implies the existence of a right of action against non-residents under other provisions of law which necessarily must be those of Sec. 3365 because there are no other provisions dealing with this subject. By construing Sec. 3365 to permit actions against non-residents, full effect would be given to the exceptions of that section, as well as to the limitation of Sec. 3374 prohibiting the maintenance of such actions where they are barred by the law of the jurisdiction where they accrued.

I am constrained, therefore, to hold that Sec. 3365, considered in conjunction with Sec. 3374, is not limited to residents and that the limitation of Sec. 3365 does not begin to run against a non-resident upon a cause of action accruing elsewhere until he enters this jurisdiction and can be served with process. Faw v. Roberdeau's Ex'r., 3 Cranch 174, 177, 2 L.Ed. 402; Schram v. Robertson, 9 Cir., 111 F.2d 722, 724; Dougall v. Schulenberg, 101 Cal. 154, 35 P. 635; Sullivan v. Shannon, 25 Cal.App.2d 422, 77 P.2d 498, 500; St. Louis & S. F. R. Co. v. Taliaferro, 66 Okl. 121, 168 P. 438, L.R.A. 1918B, 994; Ruggles v. Keeler, 3 Johns., N.Y., 263, 3 Am.Dec. 482, 483; West v.

Theis, 15 Idaho 167, 96 P. 932, 17 L.R.A., N.S., 472, 128 Am.St.Rep. 58; Van Schuyver v. Hartman, 1 Alaska 431; Burnes v. Crane, 1 Utah 179. Since it does not appear from the face of the complaint that more than six years have elapsed from the time the defendant entered the Territory to the commencement of this action, I am of the opinion that the demurrer should be overruled.