*Hubbard & Pinkerton*, for the appellant.

*A. B. Stoughton*, for the appellee.

---

## WALTER HUNT, APPELLANT,

### *vs.*

## ELIAS J. HOWE, JR., APPELLEE.    INTERFERENCE.

JURISDICTION OF THE COMMISSIONER.—The Commissioner of Patents is now vested with the whole and only original initiatory jurisdiction that exists up to the granting and delivering of the patent.

BOARD OF EXAMINERS—ITS JURISDICTION DISTRIBUTED—POWER OF COMMISSIONER.—When the board of examiners created by the act of 1836 was abolished by the act of 1839 its original jurisdiction was vested in the Commissioner and its appellate jurisdiction in the chief justice of the District of Columbia.

POWER OF COMMISSIONER PLENARY WITHIN ITS LIMITS.—It is true that the jurisdiction of the Commissioner of Patents is a limited one, but it is equally true that it is to be understood not only from what is expressly stated, but from what ought necessarily to be inferred, and is as absolute within its proper legal limits as a tribunal of general jurisdiction would be.

PUBLIC USE AND ABANDONMENT—COMMISSIONER MAY INVESTIGATE—DUE PROCEEDINGS.—The Commissioner of Patents has jurisdiction to try and determine the questions of public use and abandonment arising in connection with an application by due proceedings suitable to the nature of the inquiry.

SM—SM—SECTIONS 6 AND 7, ACT OF 1836, CONSTRUED.—The negative prerequisites to a patent—that the invention has not been in public use or on sale, &c.—as mentioned in the sixth section of the act of 1836, are equally binding upon the Commissioner with the others therein named, and are expressly submitted to his examination by the opening provisions of section 7 of the same act.

Opinion of the court.

SM—SM.—The object of the last part of the seventh section appears to be (on
refusal to grant the patent) to direct a proceeding whereby the applicant
will be allowed, under the particular circumstances stated, to withdraw
or modify his specification; and if he persists in the latter, to give him
the benefit of an appeal to a board of examiners. This construction is
necessary. in order to make one part of the section consistent with the
other.

SM—SM—MAY COMPEL ATTENDANCE OF WITNESSES.—It would seem that the
Commissioner has power to compel the attendance of witnesses for the
purpose of investigating the questions of public use and abandonment
under the clause of section 12, act of 1839, providing that the Commis-
sioner shall have power to make such regulations in respect of the taking
of evidence to be used in contested cases before him as may be just and
reasonable.

PUBLIC USE—SECRET USE.—A public use, as meant by the statute, is a use in
public. The invention need not be generally adopted by the public.
Public is not equivalent to general use, but is distinguished from secret
use—used in a public manner.

CONSENT AND ALLOWANCE—PRESUMED FROM CONDUCT.—When the machine of
a rival inventor has been publicly used for years, with the knowledge
of the applicant, or of which he might have had knowledge, he will be
presumed to have acquiesced in and consented to such public use of the
invention.

SM—SM—SALE—ABANDONMENT—REPURCHASE.—An unconditional sale by the
inventor himself of his invention, together with a machine embodying the
invention, more than ten years before filing the application, and the public
exhibition of the machine by the purchaser, is conclusive proof that the
invention was in public use, with the consent and allowance of the
inventor; and he cannot then resume his right to a patent by the repur-
chase of such invention and machine.

(Before MORSELL, J., District of Columbia, February, 1855.)

MORSELL, J.

The issue tried and decided by the Commissioner was upon
the proofs and evidence of the respective parties produced before
him and on the arguments of the counsel for the parties. The
matter of controversy was an interference declared between said
Walter Hunt's invention, above stated, and the patented invention
on the same subject of said Elias Howe, Jr.

On consideration of the case, the Commissioner was of opinion,
and so decided, that said Hunt was not entitled to a patent, and
the interference was accordingly dissolved. In stating the grounds
of his opinion, he says that "in 1846 Howe obtained a patent for

a sewing machine, upon which there have since been many improvements by others. Hunt now claims priority to all these, upon the ground that he invented the sewing machine, substantially as described in his specification, previous to the invention by Howe. He proves that in 1834 or 1835 he contrived a machine by which he actually effected his purpose of sewing cloth with considerable success." Upon a careful consideration of the testimony, the Commissioner says: "I am disposed to think that he had then carried his invention to the point of patentability." He proceeds to state his reasons for thinking so; after which he says: "The question then arises, whether anything has since transpired to deprive him of this right. It is contended by the counsel that an interference having been declared by the Office, nothing remains but the naked question of priority; that the Office cannot go backwards and take up the question of patentability. This is not my understanding of the law. The substantial question to be decided is whether Hunt is entitled to a patent. If for any cause he is found not to be so, that ends the investigation. If this discovery is made at any time before the patent is issued, it will not be too late to withhold it. The proof that there was an earlier inventor than either Hunt or Howe (though showing that the latter was no more entitled to a patent than the former) would dissolve the interference, as it would show that Hunt was entitled to nothing. And if for any other cause the testimony should show that Hunt was not entitled to a patent, it would be a useless waste of time to proceed further with the investigation. Nor can I concur in the opinion that the Commissioner of Patents has no power to decide upon questions of abandonment. The Patent Office should, if possible, make such decisions as will be sustained by the courts. It is true there are some powers exercised by the courts which the Office has no authority to exert, but I do not understand the examination of the subject of abandonment to be necessarily, in all cases, of this number." The Commissioner then proceeds to state the instances which properly belong to the court, and his construction of the seventh section of the act of 1836, and particularly as a cause for refusing a patent, that the invention has been in public use or on sale with the applicant's consent or allowance prior to the application. If

such a fact is found to exist, he says the Commissioner is forbidden to grant the patent.

He notices the modification of the rule made by the seventh section of the act of 1839, with its exception on proof of abandonment of such invention to the public, or that such purchase, sale, or prior use has been for more than two years prior to such application for a patent. To all which matters he says the Commissioner is by law directed to inquire. The Commissioner does not think the patent can be withheld on the ground of abandonment strictly. Mere lapse of time does not evince that positive abandonment of which the Office can take notice; it is not an abandonment growing out of public sale or use.

Again: "But when we regard the sale to Arrowsmith with reference to the second branch of the qualification contained in the seventh section of the act of 1839, it seems fatal to the claims of Hunt. He made a sale of his whole invention, securing a valuable consideration in return, and allowed some seventeen years to elapse before any application was made for a patent either by himself or his assignee. This seems to bring the case within the range of the prohibition of the act of 1836, as modified by the act of 1839. This amounts to giving his consent that the invention should be publicly sold and used. Hunt, by his sale to Arrowsmith, gave his consent that any person or all the world might use the invention; therefore, it was in public use or on sale with the consent of the inventor and present applicant."

In the appeal from this decision there were six reasons filed. It is supposed the first, second, and fourth will present all the material points necessary to the decision of the case, which has been submitted upon the Commissioner's decision and the respective arguments in writing of the counsel for the respective parties.

The first reason is "because the said Commissioner in arriving at his said decision decided that in cases of interference he had jurisdiction, and actually exercised jurisdiction over the question of abandonment or dedication to the public use. Second. Because the Honorable Commissioner in arriving at said decision decided that the sale by Hunt of his *invention*, (as distinguished from the sale of a practical *machine* or *machines* embrac-

ing said invention, and for practical use for the purpose,) and with the intention of procuring a patent therefor for the benefit of the grantee or assignee, was such a sale as is contemplated in the seventh section of the statute of 1836 and the seventh section of the statute of 1839; and being more than two years before application for letters-patent, is an absolute bar to the grant thereof. Fourth. Because the Honorable Commissioner in arriving at his said decision decided that a sale by said Hunt of his said invention to Arrowsmith was tantamount to giving his consent that any person or all the world might use the same.

The first point to be considered is the question of the Commissioner's jurisdiction to try or determine the objection on the ground of abandonment as exercised by him in this case. The substance of the argument is that the jurisdiction given is a limited jurisdiction, and to be confined to the matters limited in that branch of the seventh section of the act of Congress of 1836, chapter 19, (so far as relates to this subject,) which begins with the words "and if on any such examination it shall not appear to the Commissioner that the same had been invented or discovered by any other person in this country prior to the alleged invention or discovery thereof by the applicant, or that it had been patented or described in any printed publication in, this or any foreign country, or had been in public use or on sale with the applicant's consent or allowance prior to the application; if the Commissioner shall deem it to be sufficiently useful and important, it shall be his duty to issue a patent therefor. But whenever on such examination it shall appear to the Commissioner that the applicant was not the original and first inventor or discoverer thereof, or that any part of that which is claimed as new had before been invented, or discovered, or patented, or described in any publication in this or in any foreign country as aforesaid, or that the description * * * he shall notify the applicant thereof." The argument is that the statute nowhere gives such a power expressly, and that it ought not to be inferred, because it depends on the testimony of witnesses who could not be compelled to attend and testify; that the questions submitted to him are not questions *in pais*.

There are two classes of clauses in the statute—the one as to the validity of a patent, the other directing the Commissioner in

relation to his duties and defining his powers. This question of jurisdiction depending upon a proper construction of statutes, the common and settled rule must be resorted to, that all statutes and parts of statutes *in pari materia* are to be taken together in construction.

The Commissioner of Patents is now vested with the whole and only original initiatory jurisdiction that exists up to the granting and delivering of the patent. By the act of 1836, just alluded to, a mixed jurisdiction, partly appellate and partly original, was vested in a board of examiners, to be composed of three disinterested persons, to whom the applicant might appeal. The statute says said board shall be furnished with a certificate in writing of the opinion and decision of the Commissioner, stating the particular grounds of his objection and the part or parts of the invention which he considers as not entitled to be patented. And the said board shall give reasonable notice to the applicant, as well as to the Commissioner, of the time and place of their meeting, that they may have an opportunity of furnishing them with such facts and evidence as they may deem necessary to a just decision, who, if they deemed proper, might reverse the decision of the Commissioner.

When this board became dissolved its original power and jurisdiction became vested in the Commissioner of Patents, and its appellate jurisdiction in the chief justice of the District of Columbia. It is true that the Commissioner's jurisdiction is a limited one, but it is equally true that it is to be understood, not only from what is expressly stated, but from what ought necessarily to be inferred, and is as absolute within the proper legal limits as a tribunal of general jurisdiction would be.

It is argued that the power ought not to be inferred in the present instance, because it is dangerous, and because the presumption is repelled by the terms in the same paragraph beginning with "but," &c. This position I do not think correct. This will appear from considering that the monopoly is not a matter of common right, but purely of statutory grant. All the conditions and prerequisites must be complied with before any power can exist in the Commissioner to issue and deliver a patent. The negative terms respecting the invention—"and not at the time of his application for a patent in public use or on sale with

his (the inventor's) consent or allowance"—stand in the same category with the requisites of the applicant, being a person or persons having discovered or invented a new and useful art, machine, or composition of matter, or any new and useful improvements on any art, machine, manufacture, or composition of matter, not known or used by others before his or their discovery or invention thereof, and not at the time of his application for a patent, &c., a written description of his invention, drawings, and models,— then, in the language of the statute, " on due proceeding had, may grant a patent therefor." Who is to judge of the existence of these prerequisites and priority of invention? No other person than the Commissioner is mentioned, who is to do the same according to a due course of proceeding had by him.

The object of the seventh section seems to be intended to point out the course of proceeding to be pursued by the Commissioner for the purpose of ascertaining by examination as to the novelty and utility of the invention as alleged, and as appears already from a recital of the clause, the allegation that " the said invention had not been in public use or on sale with the applicant's consent or allowance prior to the application " is repeated and expressly submitted to his examination. How could he do this without possessing full and adequate jurisdiction for the purpose, according to the nature of the inquiry.

The object of the last part of the section appears to be (on refusal to grant the patent) to direct a proceeding whereby the applicant would be allowed under the particular circumstances stated to withdraw or modify his specification. If he persisted in the latter, to give him the benefit of an appeal to a board of examiners. This construction is necessary, in order to make one part of the section consistent with the other.

It is urged in the argument that the Commissioner has no power in a trial of this description to compel the attendance of witnesses, and that it is a subject for a jury. With respect to the first part of the objection, it may be answered that by the act of 3d March, 1839, section 12, the Commissioner has the power to make all such regulations in respect of the taking of evidence to be used in contested cases before him as may be just and reasonable. If it should appear, therefore, that this is one of that class, it will follow that the right to regulate will include the right to compel.

As to the latter part of he objection, that does by no means fol-
low, because in a court of law where, if a suit for infringement
should be brought on an issue of this kind, it would be proper to
submit the contested facts to a jury, especially where the intent
was essential to the result.   For there the rule is peculiar to a tri-
bunal constructed as a court of law is ; but suppose the suit to be
such as to be brought in a court of chancery, in which court there
is no jury, that court would certainly not be deprived of jurisdic-
tion for that reason ; neither ought the Commissioner.   The pro-
ceeding in this case was had under the eighth section of the act
of 1836, which declares that whenever an application shall be
made for a patent which in the opinion of the Commissioner
would interfere, &c., and the Commissioner's decision, as before
stated, was given upon the facts appearing on the trial.   I cannot
perceive any sufficient reason upon which the objections to the
jurisdiction can be sustained.

The subsequent reasons of appeal are, substantially, that admit-
ting the jurisdiction, yet there was no sufficient evidence of a
statutory bar to the appellant's title to the grant of letters-patent
as declared by the Commissioner.

The facts on which this point of the decision rests are, that in
the year 1834 or 1835 Walter Hunt, the appellant, invented the
sewing machine in question, presenting the features covered by
the claim upon which ˙he now applies for letters-patent, and at
that time constructed an experimental working machine, upon
which successful experiments were repeatedly made, and which
invention was then perfected so far forth as to have entitled said
Hunt to letters-patent if he had then applied therefor ; that not
long after the completion of the invention said Hunt sold one
half thereof for a valuable consideration to Arrowsmith, and soon
after, for a like valuable consideration, sold to said Arrowsmith the
other half absolutely and without any reservation.   On the part of
the appellant, the facts are further stated to be that circumstances
were adverse.   Those engaged in the sewing business were averse
to the introduction of sewing machines, and nothing could be done
with the invention as a source of profit without a sufficient capital
to go into the manufacture and use of the machine ; and this
Arrowsmith had not at his command.

Such was the case in the condition of affairs until in 1846 E.

Howe, Jr., obtained letters-patent for a sewing machine involving the features claimed by Hunt, and now in dispute. Hunt himself states that there were two or more machines made. In 1853 Hunt repurchased said invention and procured an application for letters therefor to be filed in the Patent Office. In the years 1834–'35 one of the machines alluded to, after the purchase by Arrowsmith, and whilst he continued the sole owner of said invention, was repeatedly exhibited and worked in public both in New York and in Baltimore. The same was freely exposed to others who were brought to examine it, and no particular means were adopted to keep it secret. Arrowsmith sold back the invention, as just stated, to Hunt for $150. The old machine itself he sold to Mr. Clark, of the firm of J. M. Singer & Co., for $100. The proof in the case also shows that machines constructed substantially upon the principles of Hunt's invention were made and publicly used by Howe and many others more than two years before the application for a patent by the appellant.

It may have been observed that the Commissioner makes his decision to depend mainly upon the construction of the seventh section of the act of 1836; that the invention has been in public use or on sale with the applicant's consent or allowance prior to the application, and not within the modification of the rule made by the seventh section of the act of 1839, the last paragraph of which is that "no patent shall be held to be invalid by reason of such purchase, sale, or use prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public, or that such purchase, sale, or prior use has been for more than two years prior to such application for a patent." It was held that the sale of the invention to Arrowsmith amounted to consent on the part of the inventor that all the world might freely use and sell the thing. The position taken in the argument of the counsel for the appellant is that there is no proof that the invention or machine was ever in public use with the consent of Hunt, the inventor, nor of Arrowsmith; but that, on the contrary, it is clear that nothing of the kind ever occurred, but both the use for two years and the consent are mere legal fictions, not sustained by facts—mere presumptions, constructive uses, and constructive assent; that there was no such intention on the part of Hunt; that the assignment was made under the authority of the

fourth section of the act of 1793; and that the assignee would be entitled to the beneficiary interest in a patent to be issued in the name of Hunt.   This is true; "and the assignee having recorded the said assignment in the office of the Secretary of State, shall thereafter stand in the place of the original inventor both as to right and responsibility."

No effect which can be given to this argument will show the case to be such as to derive support from the rule laid down in the seventh section of the act of 1839, the object of which provision was that where the invention had before the patent been used under a license or grant of the patentee, that license or grant, being a purchase or sale or use with the consent of the patentee, such purchaser, &c., should be protected; and that a sale or prior use from or under the inventor, and with his consent and knowledge, should not invalidate a subsequent patent to be granted to such inventor, provided it were not more than two years from the time of the application therefor.   This is an exception, and was intended to relieve the patentee from the effect of the former laws and their construction by the courts.   But the acts or omissions urged as a bar to the title of the inventor occurred many more than two years before the application, and must therefore be governed by the former laws and their construction by the courts.

The sixth section of the act of 1836 requires that the invention should be new—"not known or used by others before his or their discovery or invention thereof, and not at the time of his application for a patent in public use or on sale with his consent or allowance as the inventor or discoverer."   These are the conditions prescribed, and they must be complied with; for, as before said, the monopoly is not of common right, but dependent upon the grant of the public.   The undertaking on the one part is in consideration of a valuable invention, to be given up for the benefit of the public by the inventor, on a reasonable term of the exclusive use of the fruits of the invention to be secured to him.   His faith is pledged that it is a thing not known before; that there has been no unnecessary delay in the application for a patent; that it has not been unnecessarily exposed to public view; that the manufacture, machine, or invention has not been made and sold, or offered for sale to others, or permitted or suffered, without opposition, if known; otherwise a fraud would be practiced by

the inventor on the public, and by such means he would get, instead of a term of fourteen years, a greatly more extended term. These principles, I think, are clearly established. I think it necessary to state some passages from the decision of the court in the case of Shaw v. Cooper, 7 Peters, 319 to 322: "The patent law was designed for the public benefit as well as for the benefit of inventors. For a valuable invention the public, on the inventor's complying with certain conditions, gives him for a limited period the profits arising from the sale of the thing invented."

Again: "A strict construction of the act as it regards the public use of an invention before it is patented is not only required by its letter and spirit, but also by sound policy. A term of fourteen years was deemed sufficient for the enjoyment of an exclusive right of an invention by the inventor. But if he may delay an application for his patent at pleasure, although his new invention be carried into public use, he may extend the period beyond what the law intended to give him. * * * The doctrine of presumed acquiescence, where the public use is known or might be known to the inventor, is the only safe rule which can be adopted on this subject."

And now as to the public use. The substance of the facts has already been stated. A public use as meant by the statute is a use in public. It need not be generally adopted by the public. Public is not equivalent to general, but distinguished from secret use—used in a public manner. What constitutes proof of it and of consent and allowance of the applicant for a patent?

In the same case of Shaw v. Cooper the rule is laid down to be that a knowledge of such public use or sale by others, without objection on the part of the inventor (or assignee), will go far towards raising the presumption of an acquiescence, and in some cases will be a sufficient proof of it. The question in such cases is as to his consent. And if knowledge of the use of his invention by others is brought home to him, and no exclusive right has been asserted by him against that use, his silence will furnish very strong evidence that he has waived his right. If the evidence shows a long acquiescence or a very general use, it will be conclusive. No particular lapse of time is necessary to be shown after knowledge and acquiescence are established.

The principles settled by the aforegoing cases I think are appli-
cable to the instances in which those persons, who constructed
machines upon substantially the same principles with those of
Hunt, used them publicly for years before Hunt's application,
and within the knowledge of him and his assignee, or of which
they might have had knowledge.   But the evidence of the sale
by Hunt to Arrowsmith for a valuable and profitable consider-
ation, and by Arrowsmith for a like valuable consideration to
Edward Clark, of the firm of Singer & Co., of what remained of
the machine undestroyed by the fire, and the public exhibition
of the machine by Arrowsmith in Baltimore and New York, as
appears from the evidence in the case, are facts still more con-
clusive.

The construction put upon the sale to Arrowsmith, as to its
effect, and the intent that no permission was given that it should
be publicly used, I think is not correct.   The sale and transfer
was an absolute one, without reservation, by which all right thereto
or use thereof became vested in Arrowsmith and entirely out of
the control of Hunt; and it was therefore wholly immaterial
what might have been the secret intent of Hunt; nor could it at
the time of the application of the patent be brought within the
saving provision of the act of 1839 before alluded to.   And if thus
barred of his title, according to the principles of law no repur-
chase could enable him to resume the right.   To show the legal
correctness of these positions, in Shaw v. Cooper, 7 Peters, 292,
in the opinion of the court, it is said by public use is meant
use in public; that is to say, if the inventor himself makes and
sells the thing to be used by others, or it is made by one other
person only, with his knowledge and without objection, before
his application for a patent; a fortiori, if he suffers it to get into
general use.   At page 323: "Whatever may be the intention of
the inventor, if he suffers his invention to go into public use
through any means whatsoever without an immediate assertion of
his right he is not entitled to a patent; nor will a patent obtained
under such circumstances protect his right."

Curtis, page 347: "As our law stood before the year 1839, if
the inventor sold to any one who might choose to buy, although
it was only a single specimen of his invention, and sold for profit
on it as an invention, such a sale would be a 'public use,' and

the unlimited nature of the object with which a knowledge of the invention was imparted would prevent him from resuming his exclusive right by a subsequent patent." (Wood *v*. Zimmer, 1 Holt, N. P. Rep., ch. 60.) ·

In Pennock *v*. Dialogue, 2 Peters, 1 : "The use here referred to has always been understood to be a public use, and not a private or surreptitious use in fraud of the inventor," but a public use by his consent, by a sale by himself, or by others with his acquiescence, by which he abandons his right or disables himself from complying with the law—it is deemed a fraud in law to take out a patent after such use.

· I have now given to the points submitted to me in this case the fullest and most careful consideration in my power. And for the reasons already stated, I am of opinion that Hunt, the appellant, was barred of his title to receive a patent for his invention aforesaid, and that the decision of the Commissioner in the case ought to be affirmed.

*W. P. N. Fitzgerald*, for the appellant.

*Joel Giles*, for the appellee.