## Case No. 4,409

ELLITHORP v. ROBERTSON.

[1 MacA. Pat. Cas. 585.]

Circuit Court, District of Columbia. Sept. 28, 1858.

[1] [From 2 Fish. Pat. Cas. 83.]

Low & Haskill, for appellant.

MORSELL, Circuit Judge. The commissioner in his report states that Ellithorp exhibited a drawing which presented the invention in question in several figures, and which has the following writing upon it: "Drawings and explanations of Ellithorp's improvements in sewing machines; executed this day, Albany, July 7th, 1847; in presence of (signed) S. B. Ellithorp, Isaac L. Weaver;" that this drawing is attested by the widow of the subscribing witness, who adds that she saw him sign on the day of the date; and the signature of this subscribing witness is further authenticated by the affidavit of another witness, who says he was well acquainted with the handwriting of Weaver, and that the signature, he believes, was written by him; that Ellithorp filed an affidavit, dated the 13th of August, reciting the drawing—its date and its representation—of the invention in question, and proceeds to account for his delay in applying for a patent on the ground of want of means to make the application, saying he has in vain endeavored to procure the aid of capitalists to furnish means, and that until recently he had supposed the drawings destroyed; and that he has not and never designed to abandon his invention, but has at all times and in all places, as he can prove by reliable witnesses, claimed the said invention as his own, and proclaimed his intention of securing patents for the same as soon and as fast as his circumstances would enable him so to do. The date of Ellithorp's invention is clearly fixed by the drawing at July 7th, 1847. The presumption of abandonment is distinctly presented to the office, from the fact that nearly eleven years had elapsed since the invention in question was completed by Ellithorp before he gave any notice to the office of his intention to obtain a patent therefor; from the fact that Robertson's patent is now nearly four years old, and had been before the public for more than three years at the time of Ellithorp's application; from the facts, as shown in his affidavit of the 13th instant, that he was not ignorant of the state of the art to which his invention pertains; "and now, when he is offered by this interference an opportunity to rebut the presumption of abandonment, he does not offer a single witness to show what diligence he has exercised for the protection of his invention." One reason of appeal only was filed, which is, "that the said decision was made without warrant of law." The report of the commissioner in answer refers to a number of legal decisions to sustain and fortify the ground taken

in the decision made by him. Under this state of the case—with all the evidence, decision, reasons of appeal, report of the commissioner. and original papers—the same has been laid before me, due notice of the time and hearing of said appeal having been first given, on which occasion the appellant appeared by his attorney, and, after filing with me his argument in writing, submitted the said case for my consideration.

The counsel has argued the case under three heads: First. What constitutes an abandonment of an invention. Second. What measure of diligence in making an application for a patent is required on the part of the inventor. Third. Is the question of abandonment one to be taken into consideration and decided by the commissioner of patents, and if so, how is the abandonment to be proved.

It is contended that the position taken by the commissioner in his decision that the public use meant by the statute of 1836 "is involved in the publication of Robertson's patent" is incorrect, because it does not appear that any proof had been "advanced" by the office or by the patentee that his invention had ever been in public use or on sale at the time of the appellant's application; and that even if it had been proved that the invention had been in use or on sale under the patent, it would not be such a public use and sale as is clearly contemplated by the law, but a private and restricted one—restricted to those to whom the patentee might convey the right to use or sell—and would not be made with "the consent or allowance" of the original inventor. This cannot be conceded. The arguments used by the commissioner upon this point are very strong and the authorities referred to to support them pertinent. I do not know that much can be added. The statute under which the right in this case must be sustained, if it can be supported at all, is the act of congress of 1836 (chapter 357). I am satisfied that act of 1839 (chapter 88, § 7) can have no application to this case. That provision is intended to relate to the case of a use, sale, or license to use given. or made and claimed under the inventor who admits and claims the privilege; or, to make my idea more clear, and to use the language of a learned judge, "the clause should read thus: 'The patent shall not be held invalid by reason that the inventor has sold or allowed his invention to be used prior to the application for a patent, unless he has abandoned it to the public, or that such sale or prior use has been for more than two years prior to such application for a patent.'" The present is a case where the appellant, so far from claiming the exception, denies that he ever did use or sell the invention to any one, and the patentee sets up no such claim; on the contrary, he claims as an original. substantive inventor — adversary, therefore, to the claim of the appellant.

How, then, is the right claimed to be considered under the act of 1836? To entitle the appellant to a patent by the sixth section the invention must not only be new and useful, not known or, used by others before his or their discovery or invention thereof, but also "and not at the time of his application for a patent in public use or on sale with his consent or allowance." This latter part must be considered in the same category with the first. Part of the fifteenth section may also have a bearing on the matter under discussion. Alluding to objections which may be made to the validity of the patent, amongst other things, is this: "Or had been in public use or on sale with the consent and allowance of the patentee before his application for a patent; or that he had surreptitiously or unjustly obtained the patent for that which was in fact invented or discovered by another, who was using reasonable diligence in adapting and perfecting the same," &c. There are various other conditions as prerequisites contained in the law, with all of which the party must show that he has complied before he can have any right to demand or hold a patent. Although the party has a right to keep his inchoate title to his invention concealed from the public as long as he pleases, yet, when he desires to perfect his right by a patent. he must proceed with vigilance to secure his protection by as early an application as practicable; for although no particular time is limited for the application for a patent by the statute, yet it is very clear, according to a fair construction of its spirit and meaning. that it ought to be done in a reasonable time; otherwise the right may be lost by the laches of the party. What is or is not a reasonable time depends on the circumstances of each case. Whether the length of nearly eleven years from the time of the discovery to the application for a patent in this case can be deemed a reasonable time, is the question. Let the circumstances, then, be considered. Robertson having duly complied with all the previous requisites of the statute, obtained a patent, as an independent, fair, and real discoverer of the same invention, on the 28th of November, 1854, and an interference was declared on the 28th June, 1858, in the case of said patent and that of the application of the appellant of the said 28th of June, in the same year, for a patent for the same invention, as having been discovered on the 7th of July. 1847. Both of said parties were residents of the same county and state of New York. Robertson's patent had been granted and placed upon the public records of the patent office, as directed by law, and had been in operation upwards of four years before the appellant's application.

The argument by the appellant's counsel to this part of the case is that "no proof was advanced by the office or by the patentee that his invention had ever been in public

use or on sale at the time of the appellant's application. * * * Even if it had been proved that the invention had been in use or on sale under the patent, it would not have been such a public use and sale as is clearly contemplated by the law, but a private and restricted one—restricted to those to whom the patentee might convey the right to use or sell—and would not be made with the consent or allowance of the original inventor. * * * It is apparently held by the commissioner in his decision that such public use is involved in the publication of Robertson's patent." He supposes this argument to be fallacious; "for if such publication is public use, it certainly is not made so with the 'consent and allowance of the inventor,' but must be presumed to be so without and against it." Again: "That the use or sale of an invention on the part or on behalf of the patentee is not such a public one as is contemplated by law, is apparent from the fact that the monopoly of the invention for the term of years provided by law to the patentee is made the consideration that he shall at the expiration of that time allow the invention to be used by the public to compensate the public for the restriction of the invention to private use under the patent." He proceeds: "If this reasoning is sound, we hold it to be clear that the use and sale of an invention under a patent is not such public use and sale as is contemplated by law, and does not constitute an abandonment; and that the public use and sale, as well as the consent and allowance thereof by the inventor, must be made clear matter of proof before the abandonment can be legally shown; and that there having been no proof presented to or by the office that the appellant's invention had been in public use or on sale by his consent and allowance, there has therefore been no abandonment of his invention." There is considerable ingenuity and some force in this argument, and if it cannot be satisfactorily answered, ought to be allowed to have its desired effect. To recapitulate: What, then, had the office before it at the time application was made to sustain the objection to granting the patent? There was a public record of a patent for the same invention duly obtained and delivered to Robertson, a resident of the same place with the appellant, upwards of four years before, still in full force, the import and effect of which, in a legal point of view, was to give constructive notice of the fact to all who might be interested. The patent was prima-facie evidence of the exclusive title of the patentee to use or sell the invention or the machine publicly, to whom, and as he thought best for his own interest. The object which no doubt Robertson had in view in incurring the expense and trouble of securing protection for the right was so to carry it into public operation and use and sale in the place of his residence or any other place. It is natural also to suppose that this he did, and

that it must have been attended with considerable notoriety.

This, in a case like the present, and in the absence of any proof to impeach it on the ground that it had been surreptitiously or unjustly obtained, must be deemed sufficient to cast the burden of proof on the side of the appellant. The appellant's counsel, I think, is in error in supposing that the use or sale of an invention on the part or in behalf of the patentee is not such a public one as is contemplated by law. This proceeds from a misunderstanding of the terms "public use" or "on sale" as used in the statute. It is certainly not thereby meant that every one must know and have the right to use it, or even, generally, that there must be such a right or use. To show my idea to be correct, I will refer to Lund, Pat. p. 46: "The meaning of the words 'public use' is this: * * * that the use of it shall not be secret, but public. * * * If a man invents a lock, and puts it on his gate, and has used it for a dozen years, that is a public use of it." The meaning of the terms, under our statute of 1836, is similar. Curtis (section 53): "The phrase 'public use' means use in public, and not use by the public; so that under this act, if there had been a use in public by any person, with the consent or allowance of the patentee, the patent will be defeated." Under the second head of the argument the counsel considers what measure of diligence in making an application for a patent is required on the part of the inventor. His position is that there has been no such delay in this case as to bar his right; and he relies upon the case of Heath v. Hildreth [Case No. 6,309], decided by Judge Cranch. In that case, although Judge Cranch says "the statute does not limit any time in which the inventor must apply for a patent," he does not deny that he ought to apply in a reasonable time. That does not appear to have been the case of any longer delay on the part of the first inventor than was necessary to mature his invention and in preparing to make application in a reasonable time. According to the applicant's own showing, a drawing of his invention appears to have been made in the year 1847. In about a year after his house was destroyed by fire, and his property with some of his papers was destroyed, and he supposed that this paper was also; but he saved some of his papers, and this paper was among them. He says he thought it was lost, but he admits that he never searched for it until recently before filing his petition. In this respect, then, he certainly could not be excused. If he had any other reason for delay, why could he not have filed his caveat in the office? This would have protected him. He states, also, as a reason his want of means and his failure in obtaining aid from capitalists; but he says that the reason of his failure was the supposed loss of his sheet of drawings, which he never searched for until a few

months before his application. This, I have already shown, he was inexcusable for. He supposes that "the public is not injured by the non-use of an invention of which it has no knowledge, and for the lack of which it is put to no known loss or injury; and there is therefore no call or demand upon the applicant, as a matter of law or equity, to present his application within any specific time." I do not think this argument sound.

It is certainly true that while the original inventor chooses to depend upon his own secret contrivance—his inchoate right of invention—to secure him in the exclusive use and enjoyment thereof, he has a right to do so, and no one can complain of being injured; yet, when he finds it necessary to resort to the public for their aid to perfect his inchoate right by patent, a new and different condition of rights is to take place, limited by statute, in the nature of a statutory compact with mutual considerations—a quid pro quo offered by the inventor—the terms of which compact, according to the mode and spirit thereof, must be fulfilled—on the one part, fourteen years' exclusive right, secured by patent; on the other part, a new and useful invention, to become public without restriction at the expiration of that term. The main object with the legislature was to bring inventions early into public and unrestricted use; and this, of course, forming an essential part of the consideration, the public has a right to the knowledge as early as possible, consistently with the rights of the inventor in using such reasonable diligence on his part as may be necessary in adapting and perfecting his invention. This principle will be found as settled in a number of decided cases. I will refer to the case of Pennock v. Dialogue, 2 Pet. [27 U. S.] 19, where it is there stated: "If an inventor should be permitted to hold back from the knowledge of the public the secrets of his invention; if he should for a long period of years retain the monopoly, and make and sell his invention publicly, and thus gather the whole profit of it, relying upon his superior skill and knowledge of the structure, and then, and then only, when the danger of competition should force him to secure the exclusive right, he should be allowed to take out a patent, and thus exclude the public from any further use than what should be derived under it during his fourteen years, it would materially retard the progress of science and the useful arts, and give a premium to those who should be least prompt to communicate their discoveries." In consequence of the delay, Robertson has been suffered or allowed to obtain with entire fairness a patent for the same invention, and by the use and exercise thereof, or at least by the public record thereof, the invention or the knowledge thereof has become public for upwards of four years. Upon general principles, it may be asked how can the appellant, then, be able to offer what is

a most essential ingredient in the consideration of a new and useful invention, and can it be reasonable to suppose that the legislature intended to grant an exclusive right to any one to monopolize that which was already common? There certainly would be no quid pro quo. Again, upon equitable principles, under such circumstances is not the superior equity with Robertson, having combined both legal and equitable rights? If such disability is thus the consequence of the party's laches, it is of no consequence whether his intention was or was not to abandon his invention.

I think it unnecessary to add anything to what has been said by the commissioner on the ground of abandonment. The last ground of the argument is as to the jurisdiction of the commissioner to consider the ground of abandonment. Having on a former occasion fully considered and decided that he had jurisdiction of that question,—Mowry v. Barber [Case No. 9,892],—and seeing no reason to change my opinion, I shall say nothing more on that subject. With the aforegoing views, I cannot think the appellant's case has been sustained, and I think and decide that the decision of the commissioner is correct.