Palmer *v.* Shaw.

## PALMER *v.* SHAW.

THE general language of section one of the Limitation Act of 1855, that actions in the cases therein named " can only be commenced within two years from the time the cause of action has accrued, or shall accrue," is controlled and limited by the twenty-second section of the Limitation Act of 1850.

Suit commenced January 8th, 1859, on a note executed in New York, and due January 1st, 1856. Defendant not in this State when the cause of action accrued, but arrived here March 28th, 1856, and remained until June 20th, 1856, from which time he was absent until February 14th, 1857. Plaintiff resided in New York, and was fully informed of the movements of defendant. Some evidence tending to show that defendant came to this State in 1856, for a temporary business purpose, intending to return to New York and form a partnership, according to previous arrangement. Defense, Statute of Limitations of two years: *Held,* that the case is within the statute, and that the statute commenced running on the arrival of the defendant here in March, 1856—there being no fraud or concealment on the part of defendant, and his presence here between March and June being open and public, and sufficient for the commencement of a suit.

The word *" return "* used in the twenty-second section of the Limitation Act of 1850, is held by the authorities to apply as well to persons coming from abroad as to the citizens of the country going abroad for a temporary purpose and then returning. But the coming from abroad must not be *clandestine,* and with an intent to defraud the creditor, by setting the statute in operation and then departing.

Cases on this point cited and commented on.

APPEAL from the Twelfth District.

The facts appear in the opinion of the Court. The note was dated April 7th, 1855. The complaint averred, among other things, that from the date of the note to February 14th, 1857, defendant was absent from this State. Defendant had judgment. Plaintiff appeals.

*Halleck, Peachy & Billings, and Gregory Yale,* for Appellant, contended that the time between the twentieth of March, 1856, and the twentieth of June, of that year, could not be connected with the permanent residence of defendant since February 14th, 1857, so as to make the two years limitation, because defendant's " return " to this State in March, 1856, was temporary only, for a business purpose, and while he was under an agreement with plaintiff to take up his residence in New York and go into business with him in the fall of 1856; that such a visit to California was not a " return " within the twenty-second section of the Limitation Act of 1850; citing Angel on Lim. 215; *Ruggles* v.

*Keeler,* 3 Johns. 267; *Little* v. *Blunt,* 16 Pick. 361; *Hysinger* v. *Baltzells,* 3 Gill & Johns. 162–3; *Byrne* v. *Crowningshield,* 1 Pick. 266; *White* v. *Bailey,* 3 Mass. 273; *Fowler* v. *Hunt,* 10 Johns. 476; and that to claim that plaintiff should have sued defendant under the circumstances of his visit to California in 1856, would make that visit clandestine—not that defendant secreted himself, but that he came under pretences to deceive the plaintiff by putting the statute in operation.

*Parker and Waterman,* for Respondent.

1. Plaintiff should have sued during the visit of defendant here in 1856. That visit was open, public and known by plaintiff.

2. Defendant's agreement to return to New York forms no exception which prevents the statute from running, nothwithstanding the publicity of defendant's presence here and the knowledge of it by plaintiff.

Where an agreement between a creditor and debtor is insisted upon as forming an exception, to prevent the statute from running, it must be one which, by its very terms, suspends the statute, or which, by reason of fraud or otherwise, places the creditor in a position where he cannot fully assert his rights.

In *Kane* v. *Cook,* (8 Cal. 458) in discussing the exceptions which arrest the statute, the Court says: "All the exceptions specified in the statute (of Limitations) which prevent its running, are cases where a party is not in a situation to assert fully his rights. The reason of those exceptions would seem to apply with equal force to a case of fraudulent concealment."

The plaintiff claims, virtually, that the existence of the agreement to enter into copartnership arrested the statute in this action.

No fraudulent intent is imputed to the plaintiff; or in other words, it is not claimed that he came to California "with an intent to defraud the plaintiff by setting the statute in operation, and then departing." No valid agreement is shown; none for the breach of which an action could be maintained; none in any manner relating to the subject of this action, or the remedy. The plaintiff was under no legal restraint from suing the defendant here. There was no agreement to that effect—either expressed or implied.

The authorities resolve the question of knowledge, as to its effect, into the following rule: That after the creditor has knowledge of the presence of the debtor, he must proceed, with ordinary diligence, to sue out and serve the writ, or the statute will begin to run. Where a suit

Palmer *v.* Shaw.

is brought in San Francisco, and process is to be served on a defendant there, a delay of half a day would doubtless be sufficient to put the statute in motion. And a creditor living in another State, with knowledge of the presence of his debtor in this, is in the same situation and governed by the same rules, as to diligence, as a creditor residing here. Knowledge places them upon an equality, and imposes like duties and obligations.

COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This is an action upon a promissory note executed in the State of New York. The note was due on the first of January, 1856, and the suit was commenced on the eighth of January, 1859. The defense is the Statute of Limitations. The defendant was not in this State when the cause of action accrued, but arrived here on the twenty-eighth of March, 1856, and remained until the twentieth of June, from which time he was absent until the fourteenth of February, 1857. The plaintiff resided in New York, and was fully informed of the movements of the defendant. There was some evidence tending to show that the defendant only came to this State in 1856, for a temporary business purpose, and that his intention was to return to New York and form a partnership with the plaintiff, in accordance with a previous arrangement upon the subject. The question is, whether the statute commenced running at the time of the arrival of the defendant in 1856.

By the first section of the Limitation Act of 1855, it is provided that suits of this character shall be commenced within two years after the accruing of the cause of action; but the effect of the general language used in this section is controlled and limited by the provisions of the twenty-second section of the Act of 1850, which reads as follows: "If, when the cause of action shall accrue against a person, he is out of the State, the action may be commenced within the term herein limited after his return to the State; and if, after the cause of action shall have accrued, he depart the State, the time of his absence shall not be part of the time limited for the commencement of the action." (Wood's Dig. 48.)

The Court below instructed the jury to find for the defendant, if they believed, from the evidence, that he had been in the State two years since the maturity of the note. This instruction was based upon a literal interpretation of the section above quoted, and although it

may not have been technically correct, the defense was clearly made out, and the plaintiff is not entitled to a reversal upon a mere technical error, by which he could not have been prejudiced.    There was neither fraud nor concealment in the conduct of the defendant, and we do not see how the circumstance of his anticipated return to New York can avail the plaintiff.    If he had remained here, there could be no question as to the time at which the statute commenced to run, and we do not think that there is anything in the facts of this case to justify us in arriving at a different conclusion upon that subject.    The plaintiff cannot claim that the time between the twenty-eighth of March and the twentieth of June was insufficient for the commencement of the suit, nor can he say that he was ignorant of the movements of the defendant, for the contrary is shown, and these movements were open and  public. The case is clearly within the statute, and the proposition contended for by the appellant is not sustained by any of the authorities cited.

It has been uniformly held, in the  construction of statutes similar to ours, that the word *return* applies as well to persons coming from abroad as to citizens of the country going abroad for a temporary purpose and then returning.    But it seems that the coming from abroad must not be *clandestine,* and with an intent to defraud the creditor, by setting the statute in operation and then departing.    " It must be so public, and under such circumstances," says Angell, " as to give the creditor an opportunity, by the use of ordinary diligence and due means, of arresting the debtor.    *    *    A return even for a temporary purpose will do away with the exception of absence, if not a secret, concealed or clandestine presence, of which the creditor can take no advantage.    His presence must be so public and under such circumstances as the creditor may, by ordinary diligence, make an arrest."    (Ang. on Lim. 216.)

It was said by the Supreme Court of Massachusetts, in *White* v. *Bailey,* (3 Mass. 270) that the return to the State must be with a *design to dwell* within the jurisdiction of the Commonwealth ; but the point was not before the Court, and in *Byrne* v. *Crowningshield* (1 Pick. 262) a different rule was laid down.    In the latter case the Court said :  " By a return within the government, must be meant such a return as would give a party reasonable opportunity to commence an action."

The Supreme Court of the United States, in *Faw* v. *Roberdeau* (3 Cranch. 174) held that even a return for a temporary purpose was sufficient to set the statute in motion.    The case arose under the statute of Virginia, which contained a saving  clause in these words ; " Saving to

Palmer *v.* Shaw.

all persons *non compos mentis, femme covert,* infants, imprisoned, or out of this Commonwealth, who may be plaintiffs in such suits, three years after their several disabilities removed." The plaintiff was a resident of Maryland, and after the cause of action accrued, passed through a portion of Virginia, but never resided therein. Chief Justice Marshall, in delivering the opinion of the Court, said: "It is one of the facts stated, that the plaintiff was within the Commonwealth of Virginia, in the year 1786, after the cause of action accrued, and hence it is argued that he is not within the saving clause of the section, and that to exclude him from the benefit of that clause, it is not necessary that he should have become a resident of that State. The Court has not been able to find any case in which this question has been decided. We are, therefore, obliged to form an opinion from a consideration of the act itself. * * The Court is of opinion that the disability is removed at the moment when the person comes into the Commonwealth, and he must bring his action within three years from that time."

The Court of Appeals of Maryland, in *Hysinger* v. *Baltzells,* (3 Gill & Johns. 158) in speaking of certain statutes of that State, said: "These acts are to be taken together, and to receive a construction to carry into effect the plain and obvious intention of the Legislature, that limitations should not attach against a creditor, where the debtor was absent from the State at the time the cause of action accrued, because no beneficial result could be expected from the suing out a writ, when the debtor could not be arrested. But this privilege should cease when the cause upon which it was founded is removed. If, therefore, the debtor, at any time after the cause of action accrued, by his presence in the State, afforded the creditor an opportunity to prosecute his writ with effect, he should institute an action within the time required by the Act of 1715, or his claim would be barred by limitation. To bring the case within the Act of 1765 the presence of the debtor in the State must be such as to enable the creditor to avail himself of it. A secret, concealed, clandestine presence, for any length of time, of which the creditor could not take advantage, would not be sufficient."

"The coming from abroad," said the Supreme Court of New York, in *Fowler* v. *Hunt,* (10 Johns. 463) "must not be clandestine, and with an intent to defraud the creditor by setting the statute in operation and then departing. It must be so public, and under such circumstances, as to give the creditor an opportunity, by the use of ordinary diligence and due means, of arresting the debtor."

A further examination of the authorities upon this subject is unnecessary.   All the cases in which it has been held that a temporary presence was not sufficient to set the statute in motion, have proceeded upon the ground of fraud or concealment, or the insufficiency of the time to enable the creditor to institute the necessary proceedings for the recovery of the debt.   None of these ingredients are to be found in the present case.   The time was ample and the circumstances were known to the plaintiff.   There was no understanding or agreement between the parties, the effect of which was to interfere with or suspend the operation of the statute.   The fact that the defendant did not carry out the arrangement in relation to a partnership, can make no difference.   There is no evidence that he intended by such an arrangement to deceive or mislead the plaintiff; but even if there was, we do not see how it could affect the determination of this case.   The plaintiff was aware of the facts, and there was no fraud or concealment in relation to any matter upon which depended the operation of the statute.

These views are conclusive of the controversy, and it follows that the judgment of the Court below must be affirmed.

Ordered accordingly.