*E. W. Scott*, for the appellant.

*Munn & Co.*, for the appellee.

---

JAMES SPEAR, APPELLANT,

*vs.*

—— BELSON, ASSIGNOR TO STUART AND PETERSON, AP-
PELLEES. . INTERFERENCE.

SECRET INVENTION—PETITION AND SALE.—The statutory bar in section 7 of the
act of 1839 to the inventor who sells his invention more than two years
before his application, would seem by analogy properly applicable to the
inventor who secretes his invention more than two years, and thereby
injures the public.

SM—DELAY IN APPLYING FOR A PATENT.—An inventor who seeks the monopoly
afforded by a patent must present his perfected invention to the Patent
· Office at once. He cannot privately use the invention for his own gain
during several years, and then claim and expect protection for fourteen
years longer.

SM—SM.—The right of the first and original discoverer to a patent cannot be
defeated by a subsequent patentee unless the latter shows that the former
has been guilty of culpable neglect and láches.

CASE STATED.—B. invented and perfected and privately used the invention in
1853. In 1858 his neighbor S. independently invented and patented the
same thing, and put it into public use with the full knowledge of B., who
applied for a patent one year later: *Held*, That B. had shown gross and
culpable negligence, and had forfeited his right to a patent.

(Before DUNLOP, J., August, 1859.)

DUNLOP, J.
    The question of jurisdiction has been brought to my notice by
the appellees. For the reasons assigned by the Commissioner
of Patents and Judge Merrick in the case of Babcock *v.* Degener

(*ante*, p. 607), I think this appeal has been properly taken, and that I have authority to decide the case on its merits. It has been most elaborately discussed by counsel, and many questions of law and fact presented, which I need not examine, because, in my judgment, the solution of one of the points raised in the reasons of appeal will control the decision. The vital question in the case is, has Belson lost his right to a patent by failing to present his claim to the Patent Office in a reasonable time. I assume, in Belson's behalf, that the perforated chamber on the under side of the cross-piece in the cooking stove is a new and useful improvement, and fairly patentable. I assume that Belson first discovered it, and perfected and applied it practically in his own kitchen in Philadelphia in the fall of the year 1853. In the year 1858, in April and June, Spear patented the same improvement, in combination with other devices, without any knowledge of Belson's invention. This must be conceded, because there is no proof, positive or presumptive, that Spear had such knowledge; and the action of the Patent Office in 1858 *prima facie* establishes his title as an original discoverer. They are both, then, original discoverers of the same thing, Belson being the first of the two in point of time; and though Spear first applied to the Office, and secured the patents, he cannot oust Belson or defeat his application unless he shows culpable neglect and laches in Belson.

Belson slept upon his invention from the fall of 1853 till the spring of 1859, a period of more than five years. He first presented himself to the Patent Office on the 25th of May, 1859—"*Vigilantibus et non dormientibus leges subservient.*" This maxim is emphatically applicable to the patent code, whose policy favors diligence and condemns sloth. Mr. Belson had no right to use his invention privately for his own gain for five years, and then expect and claim a monopoly from the public for fourteen years more, as one of the inducements and considerations with the public in granting the monopoly is the right of the community to have immediate knowledge of, and restricted use of, the perfected invention, and the free and unrestricted use of it at the end of fourteen years. These objects can only be attained by requiring the inventor at once to present his perfected invention to the Patent Office, and to patent it.

In Pennock *v.* Dialogue, 2 Peters, 1, the Supreme Court say : "If an inventor should be permitted to hold back from the knowledge of the public the secrets of his invention, &c., it would materially retard the progress of science and the useful arts, and give a premium to those who should be least prompt to communicate their discoveries." And in Shaw *v.* Cooper, 7 Peters, 323, the same court say : "Whatever may be the intention of the inventor, if he suffers his invention to go into public use, through any means whatever, without an immediate assertion of his right, he is not entitled to a patent, nor will a patent obtained under such circumstances protect his right." Belson suffered Spear, both of them residing in the same city, to patent and put in public use the improvement from April, 1858, to May, 1859, without any assertion of his right. The same doctrine is asserted by the Commissioner of Patents in the cases of Ellithorp *v.* Robertson and Savary *v.* Lauth, affirmed upon appeal (*ante*, pp. 585 and 691).

The seventh section of the act of 1839 denies to an inventor who has sold his invention before he has applied for a patent a right to a valid patent if such sale has been made more than two years before such application ; and I see no reason why an inventor who has concealed his invention more than two years, and thereby injured the public, should stand on a better footing than the inventor above referred to who sells. The statutory bar to the inventor who sells would seem by analogy properly applicable to the inventor who secretes. Mr. Belson has withheld his application not only for more than two years, but for more than five years. His delay, in my judgment, for this long time amounts to gross and culpable negligence, and forfeits his right to a patent, unless satisfactorily accounted for.

Let us now look for a moment at the excuses assigned by him for this delay. If the statutory bar is properly applicable by analogy, as above suggested, then it cuts off all excuses, good or bad ; but if I am wrong in this, let us turn to his excuses.

Belson, on his re-examination by Stuart and Peterson, in answer to fourth interrogatory, says : "The reason I did not make application in 1855 was the inability, not having sufficient money to invest." But this inability did not exist in 1854 and the fall of 1853, when the invention was perfected and in use in Phil-

adelphia ; at least he does not say so ; and thus by his own showing he was then (in 1853–1854) without any excuse. Again, Belson says : "In 1856 I should have made application at that time but for R. D. Granger being about the establishment of Stuart and Peterson; he and myself at that time were not on good terms. Knowing that he had a great influence with the firm of Stuart and Peterson, I was under the impression that he might make it appear to them, had I succeeded in getting a patent in my own name, without their knowledge of the same, he might have made it appear that I was not looking to my employers' interests." This is a most flimsy excuse, and certainly no foundation for any judicial action. It is all suspicion and conjecture on the part of Belson, without any proof, and assails Granger and Stuart and Peterson, by imputing to them unworthy motives and the unlawful design to obstruct Belson in the exercise of his undoubted rights. No such imputations can be listened to in the absence of proof to maintain them.

I think that the Honorable Commissioner erred in awarding a patent to Belson, and that his decision of the 21st July, 1859, be, and the same is hereby, reversed.

*H. Howson*, for the appellant.

*W. E. Whitman*, for the appellee.