LOVELL (ELGEE v.). See Case No. 4,344.

LOVELL (JONES v.). See Case No. 7,478.

LOVELL (MACUBBIN v.). See Case No. 8,-928.

LOVERING (BAYSAND v.). See Case No. 1,147.

## Case No. 8,553.

### LOVERING v. DUTCHER.

[2 Hayw. & H. 367.] [1]

Circuit Court, District of Columbia. May 24, 1861.

PATENTS — APPEAL FROM DECISION OF COMMISSIONER—WHETHER EITHER ENTITLED — PUBLIC USE—CONCEALMENT — FOREIGN INVENTION AND USE.

1. Where a question of interference is decided by the commissioner of patents on appeal of the circuit court, the question to be decided by the court under the act of July 4, 1836 [5 Stat. 117], is who is entitled to a patent.

2. Where an invention has been discovered and in public use for two years or more, prior to filing the application for patent as a new discovery in the art, a patent will be denied by this court. Rule also stated when knowledge of the invention had been suppressed and kept a secret for a term of years; and also the rule when a foreign patent has been obtained for the alleged invention.

[Cited in Snowden v. Pierce, Case No. 13,151.]

Appeal [by William C. Lovering] from the commissioner of patents' decision in favor of [W. W.] Dutcher in the interference between the parties relating to improvements for temples for looms.

Mr. Brooks, for Dutcher.

DUNLOP, Chief Judge. I assume that the office was right in holding that the improvements for temples for looms claimed on their application for patents by Lovering and Dutcher were substantially the same, and that the interference was properly declared. It only remains therefore on this appeal to decide whether Dutcher was entitled to the patent awarded to him by the commissioner in his judgment of the 4th of February last. It is insisted in argument by Mr. Dutcher's counsel that the only question in issue before the commissioner or before me on this appeal, is priority of invention, and that if Dutcher was the first inventor the judgment must be affirmed. That all other issues are collateral and not to be noticed. This is a mistake. The 8th section of the act of the 4th of July, 1836, under which my jurisdiction in this case arises is in these words: "That whenever an application shall be made for a patent, which in the opinion of the commissioner would interfere with any other patent, for which an application may be pending, or with any unexpired patent, which shall have been granted, it shall be the duty of the commissioner to give notice thereof to such applicants or patentees, as the case may be, and if either shall be dissatisfied with the deci-

sion of the commissioner on the question of priority of right or invention, on a hearing thereof, he may appeal from such decision on the like terms and conditions as are provided in the preceding section of this act, and the like proceedings shall be had to determine which or whether either of the applicants is entitled to receive a patent as prayed for, &c." My authority therefore on this appeal is to determine which or whether either of the applicants "is entitled to a patent as prayed for." An applicant may be the first inventor and still not entitled to a patent. He may have lost his right in various ways, as for instance: 1st. By abandonment to the public. 2nd. Laches, in not applying in a reasonable time for a patent. 3rd. Permitting his invention to go into public use more than two years before his application. 4th. Unreasonably delaying to perfect his invention, till a later diligent original inventor perfects the invention and applies for a patent, &c. My duty therefore is to inquire into all the facts and circumstances given in evidence, which go to invalidate Dutcher's claim.

It appears according to Dutcher's own pretensions and the evidence of his sole witness, Isaac C. Myers, that Dutcher made the invention late in 1854 or early in 1855, and applied it to looms in a factory at North Bennington, Vermont, belonging to Mr. P. L. Robinson, for whom Myers was foreman or superintendent. In answer to the 8th interrogatory in chief to witness Myers, he says, "It was put on to a loom and operated. I could not tell what became of it. I may have left some there after I left, but I cannot say as to that." In answer to the 9th interrogatory in chief Myers says, "They were put there by Mr. Dutcher for trial, and experiment on Dutcher's account." In answer to the 19th, 20th and 21st cross interrogatories he says he left Bennington, Vermont, February the 8th, 1855, does not know how many temples Dutcher constructed, like the new temple, only knows those he put on the looms, and does not know how long they remained on the looms, and whether they were on the looms when he left; also proved that Dutcher had a workshop eighty yards from Robinson's factory, and was a temple loom manufacturer. Mr. Dutcher did not apply for a patent until May the 14th, 1860. His adversary, Lovering, invented the same improvement for temple for looms according to the proof in December, 1859, or in January, 1860, and applied for a patent the 28th of March, 1860. It appears that more than five years intervened between the date of Dutcher's discovery and his appearance at the office to make his claim, and not till five or six months after Lovering's discovery of the same improvement and six weeks after Lovering had actually presented his claim for the protection of a patent. It is not pretended by Dutcher (although Myers testifies his application of the temples to the looms in Bennington, Vermont, in P. L. Robinson's cotton mill, late in 1854 or early in 1855,

---

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]

was an experiment, and on Dutcher's own account); that the invention was not then perfected and complete, on the contrary his counsel, Mr. Brooks, in his argument before me, strenuously insists the invention was as perfect and complete in 1854-5 as it is now. There is no evidence that in the long interval he made any efforts to add to it or improve it, although Myers proves Dutcher was reported well off. Dutcher's invention, as now claimed is the same, without alteration, improvement or addition, as that applied to looms in the Bennington factory in 1854-5.

It seems to me very clear that Mr. Dutcher, by his long delay and gross neglect, to give the public the benefit of his invention, by presenting it after it was perfected promptly at the patent office has forfeited all claim now to receive a patent, and this for many reasons.

First. Because more than two years have elapsed since the invention was complete and the introduction into public use in Robinson's factory in 1854-55. Although Myers says the temples were tried as an experiment, it is admitted by Dutcher's counsel the invention was then perfect as it is now, and the temples were used for some time in Robinson's factory, a public place, open to public inspection without any concealment, and whether Robinson bought and paid for them or not, he had certainly the use of them in his factory. That use, if it showed the temples to be profitable, would lead to the sale of them, and gave Mr. Dutcher prospective profits. Myers says Dutcher was a manufacturer of temples, but whether he made others for sale like those put in use in Robinson's factory he does not know.

Second. If Mr. Dutcher concealed his invention for five years after it was complete, even though he never sold it for profit, or introduced it to public use, he cannot now claim a patent. This, I think, has been settled by the supreme court of the United States in Pennock v. Dialogue, 2 Pet. [27 U. S.] 1. They say: "If an inventor should be permitted to hold back from the knowledge of the public the secret of his invention, it would materially retard the progress of science and the useful arts, and give a premium to those least prompt to communicate their discoveries."

In Kendall v. Winsor, 22 How. [63 U. S.] 322, the supreme court says: "By correct induction from these truths it follows that the inventor who designedly, and with the view of applying it indefinitely and exclusively for his own profit, withholds his invention from the public, comes not within the policy or objects of the constitution or acts of congress. He does not promote, and if aided in his design, would impede the progress of science and the useful arts, and with very bad grace could he apply for favor or protection to that society, which if he had not injured, he certainly had neither benefited nor intended to benefit. Hence, if during such concealment an invention similar or identical with his own could be made and patented, or brought into use without a patent, the latter could not be inhibited nor restricted upon proof of its identity with a machine previously invented and withheld and concealed by the inventor from the public. The rights and interests, whether of the public or of individuals, can never be made to yield to schemes of selfishness or cupidity." Again at page 327, same case, they say: "It is unquestionably right of every inventor to confer gratuitously the benefits of his ingenuity upon the public, and this he may do either by express declaration or by conduct equally significant, with language, such for instance as an acquiescence in the full knowledge of the use of the invention by others, or he may forfeit his right as an inventor by a willful or negligent postponement of his claims, or by an attempt to withhold the benefits of his improvements from the public until a similar or the same improvement should have been made and introduced by others. Whilst the remuneration of genius and useful ingenuity is a duty incumbent on the public, the rights and welfare of the community must be fairly dealt with and effectually guarded." And the same page: "These cases," referring to Pennock v. Dialogue, 2 Pet. [27 U. S.] 1, and Shaw v. Cooper, 7 Pet. [32 U. S.] 291, "may be regarded as leading cases upon the question of abrogation or relinquishment of patent privileges, as resulting from the party's intention, from abandonment or neglect, or from use known and assented to." I also refer on this point to the case of Spear v. Belson [Case No. 13,223], decided by me on appeal from the patent office, August the 29th, 1859. In that case among other things I said: "The 7th section of the act of 1839 [5 Stat. 354] denies to an inventor who has sold his invention before he has applied for a patent, a right to a valid patent, if such sale has been made more than two years before such application, and I see no reason why an inventor, who has concealed his invention more than two years, and thereby injured the public, should stand on a better footing than the inventor above referred to who sells. The statutory bar to the inventor who sells, would seem by analogy very properly applicable to the inventor who secretes. Mr. Belson has withheld his application not only for more than two years, but for more than five years. His delay in my judgment for this long time amounts to gross and culpable negligence, and forfeits his right to a patent, unless satisfactorily accounted for. If the statutory bar (of two years) is properly applicable by analogy as above suggested, then it cuts off all excuses good or bad, but if I am wrong in this, let us turn to the excuses, &c." In the present case no excuse for the culpable delay has been made by Mr. Dutcher.

Third. The same invention was patented in England, to Elser and Leach, January the 8th, 1859, more than two years before the date of Dutcher's application to the patent

office here. Under the 7th section of the act of 1836, this English patent would have barred Dutcher's case, in the office the same invention had been patented abroad. The words of the section applicable here are: "But whenever on such examination it shall appear to the commissioner that the applicant was not the original and first inventor or discoverer thereof, or that any part of that which is claimed as new had before been invented, or discovered, or patented, or described in any printed publication in this or any foreign country as aforesaid, &c." It is true this provision of law has been modified by the 6th section of the act of the 3d of March, 1839. The 6th section is in these words: "That no person shall be debarred from receiving a patent for any invention or discovery as provided in the act approved on the 4th of July, 1836, to which this is an addition, by reason of the same having been patented in a foreign country more than six months prior to his application, provided that the same shall not have been introduced into public and common use in the United States, prior to the application for such a patent, &c." Now this proviso, it seems to me, still debars Mr. Dutcher. Mr. Dutcher did not make his application for a patent till the 14th of May, 1860. Many months before that time Lovering had invented and used the same temples, and had actually applied to the office for a patent, on the 28th of March, 1860. These acts of Lovering, I think, must be held to gratify the words of the proviso of the 6th section above set forth, introduced into public and common use in the United States, prior to the "application for such patent."

On all these grounds therefore, I am of opinion Mr. Dutcher has forfeited his right to the patent claimed by him. I sustain the appellant's 5th reason of appeal, and do this 24th day of May, 1861, reverse the judgment of the commissioners of date 4th of February, 1861. I am also of opinion that Lovering is not entitled to the patent claimed by him, because he has been anticipated in the invention of Dutcher, and also by the English patentees, Elser and Leach.